# Hallowell's Appeal.

1. An executor was charged with making claim against the estate of the testator on a promissory note, which, it was alleged, had been forged, and his removal by the Orphans' Court was asked for for mismanagement of the estate under his charge. An issue was sent into the Common Pleas to try the genuineness of the note, which issue resulted in a verdict for the executor, and the Orphans' Court afterwards dismissed the citation. Subsequently, the executor, on his own petition, was discharged. Appeal was, however, afterwards taken from the decree dismissing the citation.

It was *held* that the discharge of the executor put an end to the proceeding, and that afterwards an appeal did not lie.

2. Though by the act of 10th April, 1848, a writ of error is allowed in the case of a feigned issue directed by the Orphans' Court, yet an appeal from the final decree is not taken away; and on such an appeal the Supreme Court has the power to examine the whole proceedings.

APPEAL from the decree of the Orphans' Court of *Montgomery county*, entered to December Term, 1851.

This was an appeal by Thomas B. and Aaron Hallowell, from the decree of the Orphans' Court of Montgomery county, dismissing a citation which had issued, on their petition, against George Hallowell, one of the executors of the will of Thomas Hallowell, deceased.

Thomas Hallowell died on 29th April, 1848, leaving a will, in which the petitioners and respondent were appointed the executors. After an appraisement was had, George Hallowell presented a promissory note purporting to be drawn by Thomas Hallowell, the testator, in his favor, dated October 18, 1847, for $2900, payable one year after date, with interest. Thomas B. and Aaron Hallowell alleged that this note was a forgery. Their petition was presented to the Orphans' Court for a citation against George, to show cause why he should not be dismissed from the trust as executor. The citation was awarded on 20th August, 1849. In the petition it was alleged that George had possessed himself of a considerable portion of the personal estate of the testator, especially of a bond for $1000, the payment of which he was seeking to enforce, and that he had attempted to misapply the assets of the estate. It was also stated that they believed the note for $2900

to be a forgery, &c., and that, therefore, he was mismanaging the estate or property under his charge.

An answer of the respondent was filed on 29th August, 1849, in which it was alleged that he possessed considerable estate independent of his claims against the estate of his father. It was denied that the note was a forgery, but it was alleged to be true and genuine. He alleged a right to collect the bond for $1000, but denied that he had attempted to misapply the assets of the estate, or that he had mismanaged the estate or property under his charge, &c.

A replication was filed on 1st December.

On the 6th December, 1849, the Orphans' Court directed an issue to be entered in the Common Pleas, in the name of George *v.* Thomas and Aaron Hallowell, to try the genuineness of the note for $2900, prescribing the character of the declaration, viz., that it be upon a discourse had between the parties concerning the said note, and of its genuineness; that it be alleged that the defendants, in consideration of a promise to them on the part of George, promised to pay him one dollar in case the note was genuine: the plaintiff affirming the note to be genuine, and the defendants denying it. The general issue was to be pleaded. The costs to follow the suit.

On the trial, KRAUSE, J., charged:—

"This issue was directed on an application to remove the plaintiff on the ground of his claiming a note against the testator in whose will he is named an executor, which note, it is alleged, is not genuine. The trial is merely to inform the conscience of the Orphans' Court on that point; and hence the jury will find from the evidence whether the said note is either a forgery or was obtained by fraud or without consideration. In either case the plaintiff can have no verdict in his favor; if otherwise, he may. [The object of this issue and trial is not to obtain judgment on the note itself, one way or another; but only to give information to the Orphans' Court whether or not the plaintiff should be removed as executor. Whether the note shall finally be recoverable must be tried hereafter by an action brought upon it distinctly for that purpose, in which action nothing that is here determined can be of any weight."]

May 24, 1850, verdict in favor of the plaintiff for six cents damages and six cents costs.

June 31, 1851, the Court dismissed the citation.

On the part of the appellee, it was stated that, after the trial, George Hallowell applied to the Orphans' Court to be relieved from the trust, which was resisted by the appellants, but the Court granted his application; that his principal object in making the application was to enable him to bring suit for the recovery of the note.

Exception was filed, 1. To the dismissal of the citation.   2. To the part of the charge which is in brackets.

*Mulvany*, for appellants.—It was contended that the object of the issue was to *try the validity of the note;* that it was agreed that the genuineness of the note was to be tried, and it was so ordered by the Court, and the pleadings were framed so as to try its validity; that the question, whether the estate of Thomas Hallowell was to be liable for the amount of the note, was to depend on the result of the trial, and that, therefore, the Court erred in charging that the trial was had merely to inform the conscience of the Court in relation to the removal of the executor.

*Boyd*, for appellee.—The issue was not directed to determine the amount due on the note; but was directed to try the genuineness of the note, and the jury found in favor of the plaintiff.

The dismissal or not of the executor rested in the discretion of the Court, and their decree was final and not the subject of review.

The opinion of the Court was delivered, May 17, 1852, by

BLACK, C. J.—The appellants, who were two of the executors of Thomas Hallowell, deceased, presented their petition to the Orphans' Court, praying for the removal of George Hallowell, who was a third executor, for mismanagement; and specified as a particular act of misconduct, his demand to retain a large sum of money on a forged note.   The appellee's answer denied all the charges against him, and asserted the note to be genuine.   The Orphans' Court directed an issue to the Common Pleas to try this question of fact, and it was determined by the jury in favor of the appellee.   The petition was dismissed.   Soon afterwards the appellee was discharged from his trust as executor upon his own petition; but this appeal from the decree of the Court dismissing the first petition, was taken nevertheless.

The discharge of the appellee put an end to the controversy. Even if we could believe what we cannot, that the Court was wrong in refusing to remove him on the adversary proceeding, we could not reverse that decree without involving ourselves in a manifest absurdity.   It would be necessary to enter here the decree which ought to have been made below.   And how could we dismiss an executor who is already discharged?

After several decisions, not very easily reconciled with one another, it was at length settled in Commonwealth *v.* The Judges, 4 *Barr* 301, that no writ of error lay to the Common Pleas in a feigned issue directed by the Orphans' Court.   The rule thus established was firmly based on precedent, and commended itself besides to every one's judgment.   Delay in such proceedings is an intolerable

grievance; and a writ of error could serve no other purpose. It is the duty of the Orphans' Court, when the result of the trial in the Common Pleas is sent to them, to decide in accordance with the verdict, if they are so far satisfied of its truth and justice that the judges can conscientiously adopt the decision of the jury as their own. But if, on examining the evidence (which ought regularly to be certified to the Orphans' Court along with the verdict), they should be dissatisfied with the result, they may either order a new issue, or decree according to their own convictions, without regarding the opinion of the jury.

An appeal from the final decree of the Orphans' Court brings the whole subject before us for review; and, as the Orphans' Court had power to decide with or against the Common Pleas, so have we, when the case comes into this Court, if, in our opinion, justice requires us to do so. This answers the only proper purpose for which a writ of error can be taken. It is very true that we would not be at liberty to reverse the Orphans' Court, because the Common Pleas may have admitted evidence which ought to have been rejected, or rejected evidence which ought to have been admitted, if, on the whole case, we believe the decree to be right. Bills of exceptions on sharp points of law are out of place in a proceeding intended merely to inform the conscience of the Court in a matter of fact. No one ever thought of bringing up the decision of an auditor immediately to this Court by a writ of error, directed to him over the head of the Orphans' Court; and yet the necessity and propriety of it can be seen as easily as we can discern the reason for issuing one to the Common Pleas in a case like this.

These remarks may seem beside the subject, since the act of 10th April, 1848, has given a writ of error in the case of a feigned issue by the Orphans' Court. But my object is to furnish a reason for the opinion of this Court, that the statute, though it permits a new mode of correcting the errors of such a proceeding, does not abolish the old one; and to indicate what are the rules which will govern us on appeals. The Legislature could not have forbidden us to examine the proceedings in a feigned issue without taking away the right of appeal altogether. When we review the decree we must look at the whole case, and the trial of the facts is a part of the case. See 4 *Barr* 469.

A party aggrieved by an error of the Common Pleas in such a case, has two remedies: one by writ of error which the act of Assembly gives; and the other by appeal from the final decree. Those who desire to vex, harass, and delay their opponents will probably take both; and those who only wish for justice will be content, like the appellants in this case, to have the whole subject investigated at once.

We have examined the evidence given on the trial, and the

charge of the Court, and find nothing wrong in either. But if this record had been full of the most glaring errors, the appellee has corrected them all himself, by voluntarily doing what it was the whole object of the appellants to compel him to do. Indeed, we are asked to say that he *must* do that which he *has* done.

Decree affirmed.