## Dormer *et al. versus* Brown.

1. Proceeds of a sheriff's sale being in court for distribution, on petition and affidavit alleging fraud, the court awarded an issue to the right to the fund. On trial of the issue the jury failed to agree and were discharged. The court being of opinion that there was no evidence of fraud, on application, struck off the issue. *Held* to be error.

2. A party interested having complied with the provisions of the Acts of June 16th 1836, sect. 87, and April 20th 1846, sect. 2 (Executions), is entitled of right to an issue in the distribution of the proceeds of a sheriff's sale.

3. When it appears on the trial that there is no evidence of the allegations on which it was granted, the court should so instruct the jury, and the ruling could be reviewed in the Supreme Court.

4. The proceeding is not a chancery process, but statutory; the suitor's right is constitutional, and the court has no discretion.

November 15th and 16th 1872.    Before THOMPSON, C. J., READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.

Error to the District Court of *Allegheny county:* Of October and November Term 1872, No. 106.

[Dormer *v.* Brown.]

In 1865 W. H. Brown, by virtue of several warrants of attorney, caused three judgments to be entered in the District Court of Allegheny county, against Jenkins, Nish & Co., and Jenkins, Hill & Co., firms composed of the same members, except that Hill was in the latter firm only. Subsequently, in 1866, Alonzo Inskeep, I. C. Anderson, Eliphalet Downer and Joseph Kiddoo recovered judgments against the same defendants.

Brown, to April Term 1868, issued executions on his judgments under which the real estate of the defendants was sold by the sheriff.

The sheriff, under the Act of April 10th 1862, relating to the distribution of the proceeds of sheriffs' sales of real estate in Allegheny county, made a special return of the liens appearing of record against the land sold, and a distribution of the fund in his hands. Before the return was confirmed, Downer, Inskeep, Kiddoo and Anderson presented a petition to the District Court, setting forth that they believed, and expected to prove, that the defendants were not indebted to Brown in the amounts of the judgments to him, but that they had been confessed for a much larger sum than was due, for the purpose of hindering, delaying and defrauding the petitioners and other creditors of the defendants, and to prevent their property from being taken in execution for their debts.

The prayer of the petition was that the court would award an issue to try the validity of Brown's judgments.

On the 15th of August 1868 an issue was awarded as prayed for, the petitioners to be plaintiff and Brown defendant.

The issue was tried on the 7th of December 1870, when a verdict was rendered for the plaintiff; the court set aside the verdict, and ordered a new trial.

The cause was again tried December 19th 1871, when the jury failed to agree, and were discharged by the court.

On the 16th of March 1872 Brown presented a petition to the court, setting out the facts of granting the issue, the two trials, and their results. The petition further set out:—

"The said testimony was wholly insufficient to warrant a jury in finding any of the issues in favor of the plaintiffs; but, on the contrary, cannot fail to satisfy your honors, and doubtless did satisfy his honor who tried the issue, sitting as a chancellor, that your petitioner's judgments, instead of being fraudulent or paid off, were taken in good faith for a bonâ fide debt, and that a balance of several thousand dollars was still due on them; and moreover, your petitioner avers that plaintiffs failed to prove a single fact which legitimately showed or tended to show that the judgments in controversy were fraudulent or had been paid. * * * Your petitioner is now threatened with another trial, which can only be had at great loss and expense of time and money to your petitioner,

[Dormer *v.* Brown.]

and also to the serious detriment of the public interests by the un-necessary consumption of the time of court and jury. Your peti-tioner is advised that in the matter of feigned issues to try the validity of judgments, your honors sit as chancellors, and that the legitimate purpose of their trial is to inform their consciences as such ; and he therefore prays your honors, one of whom has already most patiently heard the whole testimony as given in the case, to review the same, and if satisfied that there was no testi-mony given which in your opinion would warrant a jury in finding the issue for the plaintiffs, that you will strike the said issue from the record, and direct the sheriff to proceed in the distribution of the fund according to the liens of record, and as if said issue had not been granted."

After argument, the court (Hampton, P. J.) delivered an opin-ion as follows :—

" * * * A careful examination of the evidence on file can-not fail to satisfy any rational mind that there was no fraud what-ever practised or intended by the defendant in obtaining or keeping alive his liens. The plaintiffs were not even creditors at the time these liens were obtained, nor for a long time afterwards. But if they had been, the evidence utterly fails to show that the defendant claims one dollar that he is not justly entitled to recover. Had the same evidence been before us at the time this issue was awarded that we now have, the issue would not have been granted. I only regret now that I did not give the jury my opinion on the evidence when charging them. I did, however, in this as in all other cases where I think the evidence is too clear to admit of any doubt. The facts were left to them, without any doubt as to their verdict.

" The granting of an issue like the present is a quasi proceeding in chancery, where the court, under the provisions of the act, may refuse an issue, unless the facts presented will justify it, and if the court may refuse the issue, I do not see why it may not set aside the same, after all the evidence is given, if, in the opinion of the court, such issue is not warranted. Why should the parties be put to the expense and trouble of another trial, when the court would be compelled to set aside the verdict if it should be against the overwhelming weight of evidence, as it would have been in this case, had it been in favor of the plaintiffs ?"

The decree was :—

" The court make this rule absolute, and direct that the feigned issued, heretofore granted in this case, be stricken from the record and the sheriff proceed in the distribution of the fund according to the liens of record, and, as if said issue had not been granted, sub-ject to a writ of error or appeal by the applicants in this case as provided by law."

[Dormer v. Brown.]

The plaintiff removed the record to the Supreme Court and assigned the decree for error.

*B. F. Lucas* (with whom was *P. C. Shannon*), for plaintiffs in error.—An issue was of right: Acts of June 16th 1836, sect. 87, Pamph. L. 777; April 20th 1846, sect. 2, Pamph. L. 411; 1 Br. Purd. 656, pl. 108, 109; Bichel *v.* Rank, 5 Watts 140; Reigart's Appeal, 7 W. & S. 267; Trimble's Appeal, 6 Watts 133.

*R. Woods* (with whom was *H. Burgwin*), for defendants in error. —If it be clear to the court that there is no fact in dispute, although so alleged, the court is not bound to award an issue: Knight's Appeal, 7 Harris 493. Such issue is a chancery proceeding, to inform the conscience of the court: Shulze's Appeal, 1 Barr 251; Ringwalt *v.* Ahl, 12 Casey 336.

The opinion of the court was delivered, November 22d 1872, by
SHARSWOOD, J.—The only question presented on this record lies within a very narrow compass. Had the plaintiffs in error a legal right to the feigned issue which was awarded in the court below upon their petition? If they had, it was manifest error in the court to direct that it should be stricken from the record.

The answer to this question is dependent upon another—whether the issue was awarded at the request of the parties interested, for the determination of a fact or facts material to the distribution of a fund arising from a sale by the sheriff under process issuing from the court? It appears by the record that such a sale had been made under an alias fi. fa. with waiver of inquisition of the lands of George Jenkins and others, comprising the firm of Jenkins, Nish & Co. Under the Act of April 10th 1862, Pamph. L. 364, entitled "An Act relative to the distribution of the proceeds of sheriff's sales of real estate in the county of Allegheny," the sheriff had returned a list of the liens appearing of record, to which, according to the provisions of the act, the fund would be distributed by the sheriff in the order of their priority, unless exceptions were filed. Exceptions were filed to the award of any part of the fund to three judgments and a mortgage appearing upon the list in favor of William H. Brown, by the plaintiffs in error, who were creditors by judgment posterior in date. They thereupon presented a petition with accompanying affidavits, averring that the defendants, Jenkins, Nish & Co., were not indebted to William H. Brown in the amounts of said judgments and mortgage, but that the said judgments were confessed and taken for a much larger sum than was really due, for the purpose of hindering, delaying and defrauding the petitioners and other creditors of the said defendants, and to prevent the property from being taken in execution and made liable for the payment of the just debts of the

[Dormer *v.* Brown.]

said defendants, and that the mortgage was given to secure the said judgments with the same fraudulent purpose.

By the Act of June 16th 1836, sect. 87, Pamph. L. 777, it is provided, that if any fact connected with the distribution of the proceeds of a sheriff's sale shall be in dispute, the court shall at the request in writing of any person interested, direct an issue to try the same; and by the Act of April 20th 1846, sect. 2, Pamph. L. 411, it is further provided, that before such an issue shall be directed in such case the applicant shall make affidavit that there are material facts in dispute, and shall set forth the nature and character thereof.

It has not been, and cannot be denied, that the plaintiffs in error complied with these provisions, and if so, they had a legal right to the issue for which they prayed, of which it was not in the power of the court below to deprive them, and their refusal of the prayer would have been reversible on error to this court: Bichel *v.* Rank, 5 Watts 140; Trimble's Appeal, 6 Id. 133; Reigart's Appeal, 7 W. & S. 267; Benson's Appeal, 12 Wright 159.

It is alleged, however, that upon the trial of the issue, the court was of the opinion that there was no evidence which ought to satisfy the jury that the facts stated in the petition were true, and that they had, therefore, the right to strike the issue from the record. But if such was the case, it was clearly the duty of the court on the trial to give a peremptory direction to the jury to find a verdict for the defendants, or to enter a compulsory non-suit, and then on a writ of error, bringing up by bill of exceptions the entire evidence, this court could decide whether the opinion of the court was right. Now, however, we have here no writ of error to any judgment on the issue; no bill of exceptions setting out the evidence. It is true that the testimony, which is said to have been given, is attached to the record, but it requires no argument to prove that it is no part thereof, and is therefore not judicially before us.

Nor has it been successfully maintained that it was competent for the court below under any chancery powers to take the course complained of. No doubt when a feigned issue is awarded to try some fact not arising upon the distribution of the proceeds of a sheriff's sale, as it is a matter entirely in the discretion of the court to direct such an issue, it is equally in their discretion to rescind the order. But the issue awarded in this case under the Acts of Assembly was not an issue to inform the conscience of the court, but to decide the facts in dispute material to the distribution, by a trial by jury, which is the constitutional right of the suitor. This it was the object of the acts to secure, and therefore their language is imperative, and it is our duty to enforce their plain mandate.

Order reversed, and *procedendo* awarded.