IN

# THE SUPREME COURT

OF

# PENNSYLVANIA.

WESTERN DISTRICT—PITTSBURGH 1858.

## State Mutual Fire Insurance Company *v.* Roberts.

Where a policy of insurance against fire is assigned to a mortgagee, with the assent of the insurer, in case of a loss, the assignee can only recover where his assignor could have done so, had no assignment been made.

Such an assignment does not convert the policy into a contract of indemnity to the mortgagee; it is the interest of the mortgagor alone that is covered by it.

The assignee takes it subject to all the express stipulations contained in the policy; and he cannot recover in case of a subsequent breach of the conditions by the mortgagor; such as, effecting a further insurance on the property without notice to the prior insurer.

ERROR to the District Court of *Allegheny county.*

This was an action of *assumpsit* by Morris Roberts, for the use of John Scott, against the State Mutual Fire Insurance Company, upon a policy of insurance against fire, issued by the defendants on the 12th December 1853, whereby they insured the plaintiff, for the term of two years, against loss or damage by fire, to the extent of $2500, on his brick dwelling-house in McKeesport.

The policy contained a proviso that, if the insured or his assigns should thereafter make any other insurance on the same property, and should not, with all reasonable diligence, give notice thereof to the secretary, and have the same endorsed on the policy, or otherwise acknowledged in writing, the policy should cease and be of no further effect; and that, in all cases of other insurance on the property insured, whether prior or subsequent to the date of the policy, in case of loss or damage by fire, the insured should not be entitled to demand or recover on the policy any greater

(438)

portion of the loss or damage sustained, than the amount thereby insured should bear to the whole amount insured on said property. The payment of loss or damage was limited to an amount not exceeding two-thirds the appraised cash value of the building.

On the 14th December 1853, Roberts, with the assent of the company, assigned this policy to Oliver Blackburn, to secure a mortgage debt on the premises insured and other property; and on the 20th December 1853, Blackburn assigned his mortgage and this policy to John Scott, the equitable plaintiff.

On the 16th October 1854, Roberts effected another insurance on the same premises, for $2000, with the Lycoming County Mutual Insurance Company, for the term of five years; no notice whereof was given to the prior insurers.  On the 14th November 1854, the premises were destroyed by fire.

The defendants pleaded, 1st, *non assumpsit;* 2d, payment with leave; 3d, set-off; 4th, premises not destroyed by fire; 5th, that plaintiff had not performed the conditions precedent; 6th, that on the 16th October 1854, the plaintiff, Roberts, effected another insurance on the same property in the Lycoming County Mutual Insurance Company, to the amount of $2000, and gave no notice thereof to the secretary of the State Mutual Fire Insurance Company, whereby the policy became void.

On the trial, the defendants' counsel requested the court to charge the jury:

1. That if Morris Roberts, the above-named plaintiff, obtained the insurance as alleged in the defendants' last plea, without giving notice, as alleged in said plea, and not causing the same to be endorsed on the policy issued by the State Mutual Fire Insurance Company, he is not entitled to recover.

2. That if Morris Roberts, the above-named plaintiff, obtained the insurance as alleged in the last point, and is entitled to recover at all, he can only recover such proportion of the loss or damage to the property insured as the amount insured by said State Mutual Fire Insurance Company, defendants, shall bear to the whole amount insured thereon, without reference to the dates of the different policies.

The court below (HAMPTON, P. J.) answered these points in the negative; to which the defendants' counsel excepted; and a verdict and judgment having been given for the plaintiff for $2762.50, the defendants removed the cause to this court, and here assigned the same for error.

*Loomis*, for the plaintiffs in error, cited Carpenter *v.* Washington Insurance Co., 16 *Pet.* 502; Perrin *v.* Protection Insurance Co., 11 *Ohio* 171; *Angell on Fire and Life Insurance* 214; Grosvenor *v.* Atlantic Fire Insurance Co., 3 *Smith* (*N. Y.*) 391.

. [State Mutual Fire Insurance Company v. Roberts.]

*A. H. Miller*, for the defendant in error, cited Mowry *v.* Todd, 12 *Mass.* 284; Wilson *v.* Hill, 3 *Met.* 69; Carroll *v.* Boston Insurance Co., 8 *Mass.* 515; Fuller *v.* Boston Mutual Insurance Co., 4 *Met.* 208–9; Phillips *v.* Merrimack Mutual Insurance Co., 10 *Cush.* 351, 353; Traders' Insurance Co. *v.* Robert, 9 *Wend.* 404; Tillou *v.* Kingston Mutual Insurance Co., 7 *Barb.* 570; s. c., 1 *Seld.* 405; Charleston Insurance Co. *v.* Neve, 2 *McMullan* 257; 16 *Shep.* 337; *Angell on Ins.* 104; *Phillips on Ins.* 61, 62; 2 *Duer on Ins.* § 35.

The opinion of the court was delivered by

STRONG, J.—There is but a single question in this case. It is raised by the answer given in the court below to the first point propounded by the defendants.

The policy contained the usual provision that it should not be assignable, unless the assignee should, before any loss, give notice of the assignment in pursuance of the by-laws of the company, and have the same endorsed on or annexed to the policy. One of the by-laws designated the mode in which assignments should be made, and required that they should be approved by a director.

Another provision of the policy, also an usual one, was that if the insured or his assigns should thereafter effect any other insurance on the same property, and should not with all reasonable diligence give notice thereof to the secretary, and have the same endorsed on the policy, or otherwise acknowledged in writing, the policy should cease and be of no further effect; and that in all cases of other insurance on the property, whether prior or subsequent to the date of the policy, in case of loss or damage by fire, the insured should not be entitled to demand or recover on the policy any greater portion of the loss or damage sustained than the amount thereby insured should bear to the whole amount insured on said property. Both these provisions were material parts of the contract, and both designed for the protection of the underwriters. They cannot be deprived of these stipulated defences without their consent. The safety of the insurer is dependent much upon the character of the assured, not alone upon his integrity and good faith, but upon his habits of carefulness, of prudence, and vigilance. It is obvious that the danger of fire may be much less when the assured is a man watchful and provident than where he is heedless and negligent, as well as dishonest. The provision, therefore, which requires assignments of a policy to be made with the consent of the insurers, and to be approved by them, is not unmeaning. Nor is its purpose to stipulate for a new contract with the assignee. It is designed rather to afford substantial protection to the underwriters, by enabling them to preserve, during the continuance of the risk, the safeguards which existed at its origin; those found in the honesty and watchfulness

[State Mutual Fire Insurance Company v. Roberts.]

of the assured. It was for this reason that it was early laid down that a fire policy could not be assigned pending the risk, so as to give to the assignee any interest in it whatsoever, either legal or equitable: Lord Chancellor KING, Lynch v. Dalzell, 4 *Bro. P. C.* 431. Such a policy has indeed in some of the later cases been held assignable in equity, with the subject itself, when it contained no provision to the contrary, and it is on that account that the prohibition to assign has been generally introduced.

The other provision in this policy which has been referred to is even more substantial; so important indeed that without it, the business of insurance could hardly exist. The contract of insurance is pre-eminently one in which good faith is demanded. But experience has shown that some other reliance than that upon good faith is necessary. Accordingly, it is generally made the interest of the assured to preserve the property from fire. His interest is made to concur with that of the insurers. It was so in this case. The subject was valued at $4500, but the sum insured was only $2500. Thus the assured remained his own insurer for $2000, and had a direct personal interest in the preservation of the property beyond the indemnity promised in the policy. Had he been permitted to insure the same buildings in other companies until the entire value was covered, the protection which the insurers had, in his prudent regard for his own interest, would have been lost. Not only would temptations to dishonesty have been multiplied, but the common inducements to care and watchfulness on his part would have been taken away. It was for this reason that the stipulation was introduced, that other insurance, without notice to these underwriters and approval by them, should avoid the policy. It is for similar reasons, that the same provision is found in almost every policy of insurance. And even where double insurance has been made by consent, the assured, in case of a loss, is only allowed to recover rateably.

The risk in this case was upon the interest of the owner in a dwelling-house. The contract was made with him, and the policy was taken out in his name. With the consent of the insurers, he then assigned the policy to Blackburn, to whom he had given a mortgage upon the property insured, and also upon other property. The mortgagee assigned the policy to Scott, the equitable plaintiff, also with the assent of the defendants. Afterwards Roberts, the party assured, effected another insurance upon the same building with a different company, and gave no notice thereof to the defendants, nor had it endorsed upon the policy issued by them. The naked question is, whether the second insurance, having been made by Roberts without notice to the defendants, after the assignment of the first policy, avoided it.

It is not denied that in the hands of Roberts, the original assured, the policy would be utterly worthless; but it is insisted

[State Mutual Fire Insurance Company *v.* Roberts.]

that in the hands of Scott, who holds under an assignment with the consent of the defendants, it is still available. A policy of insurance is not a negotiable instrument. It is assignable only in equity. Consequently, the assignee takes it subject to all the equities which existed between the original parties at the time of the assignment. He takes it, however, burdened with no other equities than those which existed at the time of the assignment and notice thereof. But it does not follow from this, that by the assignment and notice the underwriters are deprived of the continued protection of the stipulations of their contract. These are not equities. They are legal rights, which are cut off by no transfer of the instrument. While subsequently accruing secret equities between the original parties, and those which may arise outside of the contract, cannot affect the assignee, yet he takes the instrument as it is, bound by all its expressed provisions. The assignment does not change the contract. It simply converts one of the parties into a trustee for a third person. Every condition precedent, upon which the liability to pay is made to depend, remains as before. Were it not so, it would not be an assignment, but a new contract. Now, by the express terms of this policy the defendants were to become liable to pay, in case of a loss, only upon condition that neither Roberts, nor any person to whom he might assign it, should effect a second insurance without giving notice to them and having the same endorsed on this policy, or otherwise acknowledged in writing. To strike out the condition would make the liability absolute; an obligation which they never assumed. It is perfectly competent for a man to engage for himself and for another, and the liability of a promissor may be made dependent upon the action or non-action both of the promissee and one who has no interest in the contract. In such a case, he who takes an assignment from the promissee may be affected by the conduct of others after the assignment. The possibility is inherent to the contract. And here, when it is remembered that the object of the prohibition to either Roberts or his assigns, against obtaining additional assurance without consent, was to maintain an interest in the assured to preserve the property from destruction, it seems quite clear that the intention of the parties was, that no other insurance should be obtained upon the building by any one during the continuance of the risk; for if, when the policy had been assigned, the assignor might obtain new insurance elsewhere, he would cease to have any interest in protecting the property against a fire.

The argument of the plaintiff, therefore, in order to be successful, must establish the position that the assignment of the policy, with the consent of the underwriters, created a new contract with the assignee; a contract that did not embrace the stipulations that existed in the policy before the assignment. Sensible of

this, he has strenuously urged that by the assignment with the consent of the underwriters, the policy ceased to be an engagement to indemnify the mortgagor, and was converted into a contract to indemnify the mortgagee. Both the mortgagor and mortgagee have insurable interests. Each may take out a policy, but the insurances are entirely independent of each other. The interests are not the same, and neither can claim from the insurer more than indemnity for the destruction of his interest. But if, by an assignment by the mortgagor to the mortgagee, with the assent of the insurer, the policy becomes a contract of indemnity to the mortgagee, then when the interest of the mortgagee ceases, the policy necessarily dies. Payment of the debt by the mortgagor would annihilate the contract of insurance. Yet it cannot be doubted that, if Roberts had paid the mortgage debt to Scott, the equitable interest in the policy would have immediately reverted to him. The contract would have continued in force for the indemnity of the owner. How could this be, if it had become an insurance upon the mortgagee's interest? So, had the assignment been made in the same form to one who was not a mortgagee, and who had no interest in the building, if it was not the mortgagor's interest which remained insured, there would have been no insurance; for in the case supposed, the holder of the policy would have had no insurable interest. Such a result will hardly be pretended. Even in Massachusetts, where an assignee of a policy, assigned with the consent of the insurers, is permitted to sue in his own name, it is settled that the assignor is the person who continues to be insured, notwithstanding the assignment. In Phillips *v.* The Merrimack Mutual Fire Insurance Company, 10 *Cushing* 350, METCALF, Justice, in speaking of such a case, said: · " The only effect, therefore, of the assignment of the policy to the plaintiff was, to authorize the defendants to pay to him, instead of Flint (the assignor), the amount of any loss for which they might be liable under the policy. And their assent to the assignment is tantamount to an express promise to pay the plaintiff accordingly." He adds: " It was Flint's interest which was insured, and he continued to be the party insured." See also McComber *v.* Ins. Co., 8 *Cushing* 133, to the same effect. That the assignee may in Massachusetts sue in his own name does not touch the question, for, though he becomes a legal plaintiff, yet the promise which he seeks to enforce, is that which is contained in the policy, subject to all its expressed conditions. The supposition that there is some magic in the assent of the underwriters to an assignment, which converts the policy into a new contract with the assignee, arises out of a misapprehension of the purpose for which such assent is required. As already stated, it is not to enlarge the engagements of the insurers, nor to enable them to waive any of the conditions, on the perform-

ance of which their liability depends. It is not to give new privileges to the assured, which without it he would not have, but it is solely for the protection of the insurers. It would be a perversion of its design to give it any other effect. The assignment then must be regarded as an appointment of Scott, the equitable plaintiff, to receive any money which might become due to Roberts, by reason of a loss sustained by him, and not as a contract to indemnify the mortgagee. It has been likened in the argument to an assignment of a bond, with the assent of the obligor, and correctly enough. It is said, that after such a transfer it is not in the power of the assignor to do anything to discharge the obligor. That may be admitted, where the bond has been given to secure a present indebtedness. But the liability of the insurer is conditional. Suppose the assigned bond had only bound the obligor to pay on condition that neither the obligee nor his assigns should set up a trade in a certain village. Such a bond would be more like this policy. The obligor might well consent to its transfer, and admit that he had no defence against paying it according to its conditions, but who would say that he would be bound to pay, if the obligee after the assignment should set up the trade in that village ?

I am aware that there are to be found in the decisions of two of the courts of our sister states, adjudications that such assignments, with the consent of the underwriters, are equivalent to new policies issued to the assignees. Of course, it is meant to refer to those cases where the assignee has an insurable interest, for, as the contract is one of indemnity, where there is no interest there can be no loss. These cases are : The. Traders' Insurance Co. *v.* Robert, 9 *Wendell* 404 ; Tillou *v.* The Kingston Insurance Co., 1 *Selden* 405; and Charleston Insurance Co. *v.* Neve, 2 *McMullan* 237. Both the latter were decided upon the authority of the former. That was a case in the Supreme Court of New York, and so far as it relates to the doctrine now under discussion, was never reviewed in the Court of Appeals. There, a mortgagor having effected an insurance on the mortgaged property, assigned his policy to the mortgagee with the assent of the insurers. It contained a condition against other insurance similar to that which is found in this policy. After the assignment, he effected another insurance upon the same property. It was held that, though the assignee was compelled to sue in the name of the original assured, yet the subsequent insurance did not affect his right to recover. He was treated as if the policy had been issued to protect his interest as mortgagee. It must be admitted, that this case is in entire accordance with the ruling of the court in the case now before us. It was followed in New York, by Tillou *v.* The Kingston Insurance Company, 1 *Selden* 405, which was decided on its authority alone, without any examination of the

correctness of the principle asserted in it.   The South Carolina case was also decided with Traders' Ins. Co. v. Robert in view, and in part rests upon it.   Judge BUTLER, however, who delivered the opinion of the court, expressed a doubt whether that case had not gone too far.   These are all the cases known by me, in which the doctrine has been sustained.   It has its root entirely in Ins. Co. v. Robert.   But the doctrine of that case has been completely exploded, and it is no longer authority even in New York. In Grosvenor v. The Atlantic Mutual Ins. Co., 3 *Smith* 391, recently decided by the Court of Appeals, it has been thoroughly reviewed and overruled.   So has been also Tillou v. The Kingston Mutual.   HARRIS, Justice, in delivering the opinion of the court, remarked : " The undertaking to pay the plaintiff was an undertaking collateral to, and dependent upon the principal undertaking to insure the mortgagor.   The effect of it was, that the defendants agreed that whenever any money should become due to the mortgagor upon the contract of insurance, they would, instead of paying it to the mortgagor himself, pay it to the plaintiff.   The mortgagor must sustain a loss .for which the insurers were liable, before the party appointed to receive the money would have a right to claim it.   It is the damage received by the party insured and not by the party appointed to receive it, that is recoverable from the insurers.   The insurance being upon the interest of the mortgagor, and he having parted with that interest before the fire, no loss was sustained by him, and none was recoverable by his assignee or appointee.   The right of such a party being wholly derivative, cannot exceed the right of the party under whom he claims."   And again in language equally strong : " The defendants contracted with McCarty (the mortgagor), and not with the plaintiff.   They agreed upon the performance of certain conditions to pay for him to the plaintiff certain money.   Some of these conditions were positive in their character, others negative, certain things were to be done by the assured, and other things were not to be done.   If all these conditions were performed, then, if a loss occurred, the defendants agreed to indemnify him against that loss, to the extent specified in the policy, and he appointed the plaintiff to receive from the defendants, the amount for which they were thus contingently liable.   The terms of the contract have never been waived, released, or modified.   The defendants have shown an express violation of one or more of the conditions upon which their liability was to depend."   The court also declared that there was no difference between that case, and that of an assignment of a policy to a mortgagee, with the consent of the insurer.   In either case the insurance is upon the interest of the mortgagor.   Such an appointment or assignment ought not to be construed so as to vary, in any respect, the liabili-

ties of the insurers upon their original contract. The court therefore ruled that the plaintiff could not recover.

I have referred at considerable length to this case, because it covers the whole ground in controversy, because it reviews fully the preceding cases that assert a different doctrine, and because its reasoning commends itself to our approval. Carpenter *v.* The Providence Washington Insurance Company, 16 *Peters* 495, maintains the same views which were expressed by the Court of Appeals of New York. Enough has, however, been said to show that in our opinion the defendants are not liable either to Roberts or to his assignee, upon this policy; the conditions upon which their obligation to pay rests, not having been fulfilled by the assured.

The judgment is reversed, and a *venire de novo* awarded.