## Heine, Appellant, *v.* Lancaster County Mutual Insurance Company.

*Insurance—Fire insurance—Assignment of policy to secure mortgage— Forfeiture—Additional insurance—Construction of policy.*

1. Where a policy of fire insurance is assigned as collateral security for a mortgage loan, the assignee can only recover where his assignor could have done so, had no assignment been made. If at the time of the assignment the policy was void, because of additional insurance taken by the insured without the consent of the company, the assignee can recover nothing on the policy in case of fire.

2. Where a clause in a policy of fire insurance relating to an assignment of the policy as collateral security with the approval of the company, provides that "after the approval of such assignment the interest of such assignee in this policy shall not be vitiated by any subsequent change of ownership of the property insured; nor by any act or neglect of the owner of said property," the word "subsequent" relates not only to change of ownership but also to any act or neglect of the owner; and if prior to the time of the assignment the owner had taken out additional insurance without the consent of the company, the policy is void as to the assignee in accordance with the general rule.

Argued Nov. 17, 1911. Appeal, No. 174, Oct. T., 1911, by plaintiff, from judgment of C. P. Lancaster Co., Feb. Term, 1911, No. 12, on verdict for defendant in case of Paul Heine, now to the use of The Northern Trust & Savings Company, v. Lancaster County Mutual Insurance

Company.  Before RICE, P. J., HENDERSON, MORRISON,
ORLADY, HEAD, BEAVER and PORTER, JJ.  Affirmed.

Assumpsit on a policy of fire insurance.  Before LAN-
DIS, P. J.

The opinion of the Superior Court states the case.

At the trial the court gave binding instructions for de-
fendant.

Verdict and judgment for defendant.  Plaintiff ap-
pealed.

*Error assigned* was in refusing to make absolute rule to
show cause why judgment should not be entered for plain-
tiff n. o. v.

*John E. Malone,* with him *J. R. Kinzer,* for appellant.—
It is now well recognized as a general rule that when a
stipulation or an exception to a policy of insurance,
emanating from the insurers, is capable of two meanings,
the one is to be adopted which is most favorable to the in-
sured: Burkhard v. Ins. Co., 102 Pa. 262; Humphreys v.
Nat. Benefit Assn., 139 Pa. 264.

In view of the fact that this mortgagee clause provides
that after the approval of the assignment the interest of
the assignee in the policy shall not be vitiated by any sub-
sequent change of ownership of the property insured; nor
by any act or neglect of the owner of said property, we
maintain that this act of taking out other insurance cannot
vitiate the policy so far as the appellant is concerned:
Hare v. Headley, 35 Atl. Repr. 445; Palmer Sav. Bank v.
Ins. Co., 166 Mass. 189 (44 N. E. Repr. 211); Mut. Fire
Ins. Co. v. Alvord, 61 Fed. Repr. 752; Ins. Co. of N. A. v.
Trust Co., 71 Fed. Repr. 88; Breeyear v. Ins. Co., 71 N.
H. 445 (52 Atl. Repr. 860); Syndicate Ins. Co. v. Bohn,
65 Fed. Repr. 165; West Chester Fire Ins. Co. v. Cover-
dale, 29 Pac. Repr. 682; Smith v. Ins. Co., 55 Atl. Repr.
715; Pioneer Sav. & Loan Co. v. Ins. Co., 49 Pac. Repr.
231.

That the effect of the clause is the same whether the act or the neglect of the mortgagor referred to a time prior or subsequent to the transfer of the policy: Syndicate Ins. Co. v. Bohn, 65 Fed. Repr. 165; Hanover Fire Ins. Co. v. Bohn, 48 Neb. 743 (67 N. W. Repr. 774).

*Chas. W. Raby,* for appellee.—Where a policy of insurance against fire is assigned to a mortgagee, with the assent of the insurer, in case of a loss, the assignee can only recover where his assignor could have done so, had no assignment been made: State Mutual Fire Ins. Co. v. Roberts, 31 Pa. 438.

The assignee of a policy of fire insurance takes it subject to all the equities which existed between the original parties at the time of the assignment: Wilson v. Ins. Co., 174 Pa. 554; Buckley v. Garrett, 47 Pa. 204; Imperial Fire Ins. Co. v. Dunham, 117 Pa. 460.

The assignment did not change the contract between the assured and the insurer: Buckley v. Garrett, 47 Pa. 204; State Mut. Fire Ins. Co. v. Roberts, 31 Pa. 438; New Kensington Lumber Co. v. Ins. Co., 35 Pa. Superior Ct. 32; Stainer v. Ins. Co., 13 Pa. Superior Ct. 25.

OPINION BY HEAD, J., March 1, 1912:

In September, 1907, the defendant company issued its policy of insurance to Paul Heine, the legal plaintiff. In April, 1910, Heine, the insured, assigned it to the use plaintiff as collateral security for a mortgage loan. The assignment was in writing indorsed on the policy and declared in the usual form that for value received the insured did thereby transfer and set over "all my right, title, interest, claim or demand to the within policy of insurance to Northern Trust and Savings Co. as collateral security for money loaned." The policy thus assigned was presented to the secretary of the company who thereupon added over his signature the word "approved."

In July, 1910, a few months after the assignment, the property insured was destroyed by fire, the loss exceeding

the amount of the policy. Suit was brought by the use plaintiff to recover the insurance. The company defended on the ground that, in violation of the terms of the policy, the insured, as early as 1908, two years before the assignment, had without any notice to the defendant taken out additional insurance in another company and thereby avoided the policy. Upon the trial, this fact having been made to appear without dispute, the learned trial court directed a verdict for the defendant, and judgment having been entered thereon the use plaintiff appeals.

It is conceded by every one that as between the defendant company and the insured, the contract of insurance terminated when the insured, against the plain prohibition of the policy, took out additional insurance without the knowledge or assent of the defendant company. And as a consequence, when, about two years later, the insured undertook to assign to the use plaintiff "all my right, title, &c. to the within policy of insurance," he had nothing of value to assign. If then the rights of the assignee depend solely on what he took by the assignment, the instructions of the learned trial judge were undoubtedly right. And it has long since been held that the effect of such an assignment was simply to put the assignee in the shoes of the insured and enable him to receive from the insurance company just what his assignor could have recovered and no more: State Mut. Fire Insurance Co. v. Roberts, 31 Pa. 438; Buckley v. Garrett, 47 Pa. 204. The authority of these cases has never been questioned.

But it is earnestly argued by the able counsel for appellant that the policy in the present case contained a provision by force and effect of which the assignment referred to, followed by the approval of the company, resulted in the creation of an entirely new contract of insurance between the company and the assignee so that, even conceding there was no liability on the policy to the insured assignor, there still remained a valid contract of insurance with the assignee upon which a recovery could rightfully be had.

We turn then to an examination of the language of the

policy. We may observe in the outstart that it contained a number of prohibitions which the insured might not violate without avoiding his contract, e. g., a change in the ownership of the property; a material increase in the hazard of the risk; the use on the premises of certain articles, etc. It recognized the right of the insured to assign his policy as collateral security and contained, in that respect, the following provision which now becomes the material point of our inquiry: "In case the policy be assigned as collateral security . . . ., such assignment shall be endorsed on the policy and brought to the office of the company for its approval in writing before a loss shall occur and within thirty days after such assignment; and after the approval of such assignment the interest of such assignee in this policy shall not be vitiated by any subsequent change of ownership of the property insured; nor by any act or neglect of the owner of said property," etc.

As already noted, the assignment was in writing which was indorsed on the policy and the same was presented within the time limited and received the approval of the company. What was the effect of that approval in the light of the language of the policy just quoted? It will be observed that the policy declares that in such case the interest of the assignee "in this policy" shall not be vitiated by any subsequent change of ownership of the property insured. Why was the word "subsequent" introduced in that clause? Its presence certainly does not indicate that it was the intention of the company to ignore a change of ownership that had already occurred without its knowledge with the result of avoiding the policy. The language fairly and we think clearly imports that it was the intention of the company thereafter to recognize the assignee as the person insured, not under a new contract but under the existing one. As a consequence of that recognition no subsequent act in the way of change of ownership by the person originally insured could vitiate the status of assignee. Now a change of ownership, without the knowledge of the company, was only one of a number of acts

that might be done by the insured, any one of which would result in the destruction of the insurance contract. The attitude of the company then towards the assignee, as his status might be affected by an act of the insured changing the ownership of the property, is clear. Having seen that the company in such case only contemplated the protection of the assignee where the act was subsequent to the approval of the assignment, why should it assume a radically different attitude towards other acts of the assignor belonging to the same prohibited class and resulting in the same consequences as the change of ownership particularly mentioned? When it embraced all such acts in a general clause, "nor by any act or neglect of the owner" immediately following the specific one, familiar rules of construction require us to hold that the acts included in the general clause are those, and those only, kindred to and to be fairly classed with the act or acts designated in the immediately preceding particular clause. If we are to attribute to the general clause the broad meaning ascribed to it by the appellant, there was no occasion for the insertion of the provision with relation to change of ownership we have just considered. The whole substance then of the entire provision would have been briefly expressed in stating that the interest of the assignee could not be vitiated by any act or neglect of the owner. Certainly this was not the purpose of the company. Whether, then, we analyze the entire sentence from the view point of the grammarian, or whether we consider it with the idea of giving effect to its manifest spirit and intent, we must hold that the word "subsequent," which plainly classified the act of the owner in regard to change of ownership, was equally the qualification of every other act or omission by him which may have been forbidden by the terms of the policy as it issued.

The policy as we view it exhibits in other respects conclusive evidence that it was not the intention of the company, in approving the assignment, to enter into a new contract of insurance with the assignee regardless of the

then status of the outstanding policy. As we have already seen, the assignment itself declares in unmistakable terms that the assignee was to take but the then interest of the insured in the existing contract of insurance. The policy reserves to the company the right to cancel it after giving fifteen days' notice of its intention so to do to the assured "and with similar notice to the holder of the policy as collateral security if the policy be so assigned." If the assignee had a new contract of insurance directly with the company, why should he have notice of its intention to cancel its contract with the party originally insured? If, however, his contract was in fact the original contract with the insured, and if his relation to the company existed because of the transfer of that contract to him, then the notice provided for was essential to the protection of his rights.

The conclusion thus drawn from a study of the provisions of the policy, on which the claim of the appellant must rest, is not weakened by the fact that, in a number of other jurisdictions, courts have reached a different conclusion where the policy contained what is styled by Dr. Cooley a "union mortgage clause" as distinguished from the ordinary "loss payable" or "open" mortgage clause. In his valuable "Briefs on the Law of Insurance," vol. 2, the learned author discusses at some length the rights of an assignee of a policy containing the union mortgage clause. On page 1525 he sets forth the provisions of such clause, and it cannot be successfully contended that they are not much broader in their scope and extent than the language of the policy in suit we have been considering.

We are satisfied, however, that we must determine the rights of the use plaintiff in this case by the terms of the policy on which he rests his action. Construing these provisions under the rules that have long governed the courts of Pennsylvania in the interpretation of written contracts, it appears to us we necessarily reach a conclusion which, whilst destructive of the claim of the plaintiff

here, is in harmony with sound legal principles and the long accepted decisions of the highest court of our own state. The assignments of error are therefore overruled.

Judgment affirmed.