# Kilgallon v. Niagara Fire Insurance Co., Appellant.

*Insurance—Fire insurance—Sole ownership—Covenants—Waiver—Estoppel—Mortgage clause.*

In an action on an insurance policy, the defense advanced was that the plaintiff held the property insured in common with another person, although the insurance was written as if he owned the entire fee. Evidence was produced to show that sometime prior to the placing of the insurance, the plaintiff had divided the tract with his cotenant but had failed to execute the necessary deeds in partition. It was also shown that the plaintiff took the agent of the insurance company to the property to examine it for himself and to determine whether or not the company would approve of an increase in the amount of insurance on a building, located on

the plaintiff's part of the land, and at the same time fully explained to the agent the nature of his title.

Under such circumstances the company was visited with knowledge of the exact condition of the title, before issuing its policy, and it cannot afterwards be allowed to assert that the plaintiff had forfeited his right to recover the insurance, or that it was only liable for one-half of the loss, on the ground that the plaintiff had only a half interest in the property.

*Evidence—Witnesses—Interest.*

In a suit on an insurance policy, a use-plaintiff and a legal plaintiff are both qualified witnesses. They are not joint plaintiffs, and the interest of the use-plaintiff is derived from and based upon the interest of the legal plaintiff. Neither witness could be concluded by the testimony of the other and any discrepancy in their assertions was a matter for the jury.

PORTER, J., dissents.

Argued March 1, 1920. Appeal, No. 7, March T., 1920, by defendant, from judgment of C. P. Luzerne County, March T., 1917, No. 872, on verdict for the plaintiff in the case of Daniel Kilgallon, to the use of Joseph M. Stark, as his interest may appear, v. Niagara Fire Insurance Company of New York. Before PORTER, HENDERSON, HEAD, TREXLER, KELLER and LINN, JJ. Affirmed.

Assumpsit   on   policy   of   insurance.   Before STRAUSS, J.

The facts are stated in the opinion of the Superior Court.

Verdict for plaintiff for $1,135.60 and judgment thereon. Defendant appealed.

*Errors assigned* were the charge of the court, answers to points and refusal to direct a verdict in favor of the defendant.

*John McGahren,* for appellant.—The policy was void because of the failure of the mortgagee to notify the insurance company that the property had been vacated and that the insured had but one-half interest in the

property: McClure's Ins. Co., 90 Pa. 277; Hardiman v. Fire Assn., 212 Pa. 383; Bemis v. Ins. Co., 200 Pa. 340; McCurdy v. Ins. Co., 30 Pa. Superior Ct. 77; Trask v. Ins. Co., 29 Pa. 200; Devaney v. Ins. Co., 64 Pa. Superior Ct. 510; Robb v. Ins. Co., 230 Pa. 44; Ormsby v. Ins. Co., 58 N. W. 301; Building and Loan Assn. v. Fire Ins. Co., 23 Pa. Superior Ct. 89; Elliott v. Ins. Co., 117 Pa. 548; Livingstone v. Ins. Co., 255 Pa. 1; Ins. Co. v. Dunham, 117 Pa. 475; Beddall v. Ins. Co., 28 Pa. Superior Ct. 600.

*Andrew Hourigan,* and with him *John T. Lenahan,* for appellee.—The mortgage clause constituted an independent contract of insurance: Ormsby et al. v. Phœnix Insurance Company, 5 S. D. 72; K. of J. B. & L. Assn. v. Mechanics' Fire Ins. Co., 66 Pa. Superior Ct. 94; Reed v. St. Paul Fire & M. Ins. Co., 67 Pa. Superior Ct. 117; Syndicate Ins. v. Bohn, 65 Fed. 165; Penna. Co. v. Aachen, etc., 257 Fed. 192; Heilbrunn v. German Alliance Ins. Co., 202 N. Y. 610; Eddy v. L. A. Corp., 143 N. Y. 311; Joyce on Ins., Section 2795.

The insurance company was estopped from asserting the covenant with reference to the title to the real estate: Caldwell v. Fire Assn., 177 Pa. 492; Clymer O. Co. v. Flood, C. M. F. I. Co., 238 Pa. 141; Western Assur. v. Mason, 5 Ill. App. 141; Somerset Co. Mut. Fire Ins. Co. v. Usaw, 112 Pa. 89; Bone v. Detroit Ins. Co., 261 Pa. 558.

OPINION BY HEAD, J., April 24, 1920:

The action was assumpsit on a policy of insurance issued by the appellant to Daniel Kilgallon, the legal plaintiff in the suit. It insured the said plaintiff in the sum of $1,000 against loss or damage by fire to the property in the policy described, theretofore used as a dwelling house. During the life of the policy there was duly attached to it, what is commonly called a "mortgagee clause" or "a standard mortgagee clause," to pro-

tect the interest of Joseph M. Stark, who had lent a considerable sum of money to Kilgallon, and held a mortgage covering, inter alia, the property insured. The mortgagee thus became the use-plaintiff in the pending action. The property was entirely destroyed by fire during the life of the policy and suit was brought to recover the amount of the loss.

Defense was made by the company on the ground, among others, that the property was practically worthless; had been abandoned and suffered to fall into dilapidation and decay. On this subject the testimony was conflicting. The estimates of the value of the property by those who testified ranged from $100 to $2,500. Manifestly there was raised a question of fact which required submission to the jury. We think the learned trial judge discharged his duty in this respect in a manner that cannot justly be complained of and the verdict of the jury, fixing the amount of the loss, removed that question from further controversy in an appellate court. We may note here our concurrence in the view taken by the trial judge, that each of the parties plaintiff had a substantive interest in the controversy—as a consequence neither could be concluded by testimony given by the other.

Defense also was vigorously urged on the ground that the property was vacant, unoccupied at the time of the fire, and had been permitted by the owner to remain in that condition for a considerable period of time, in contravention of the terms of the policy on that subject. Again the evidence was conflicting. There was warrant for a finding that a permit, covering the vacancy, had been duly issued to the insured by the agent before the fire. His authority to issue such a permit on proper showing was not denied. If it was issued and delivered to the assured, the fact that he did not actually attach it to the policy itself would not, in our judgment, destroy its validity. The verdict has settled the issue as to vacancy. Apart from this, however, we are urged to de-

clare that as against the mortgagee, the use-plaintiff in the action, this defense was not available to the appellant company. This brings us to a more careful consideration of the nature and effect of the mortgage clause already referred to; and of the rights and interests of the mortgagor owner and the mortgagee respectively, in an action like the one that is before us.

We do not think it important to expend time or effort in attempting to determine whether the relation assumed by the insurance company to the mortgagee, when a mortgage clause is attached to a policy, should be called a covenant or a condition. Sound legal principles cannot be nourished, sustain their life and maintain their growth merely upon the names of things. Nor do we accomplish anything by classifying, too broadly, the new relation created by the mortgage clause. There is, beyond peradventure, a contractual relation created different from that theretofore subsisting between the company and the owner. Nevertheless the duration of the life of the new contract is fixed in the terms of the policy. The limitation of the money liability of the company is to be found there and not elsewhere. The subject-matter of the insurance is defined and described in the language of that instrument. The things therein prescribed to be done after the occurrence of a loss still remain as obligations that must be complied with. It seems clear then that, although a new relation is created between the company and the mortgagee, that relation cannot be entirely dissociated from the policy of insurance, which is the foundation upon which it must rest. The clause referred to begins with the declaration that "The loss or damage, if any, under this policy shall be payable to Joseph M. Stark, as first mortgagee, as his interest may appear." Had the clause stopped here, as such clauses did in earlier days, it would be plain enough that the mortgagee would be but the nominee, to whom the damages suffered by the insured should be legally payable; and so, in the earlier cases, it was held such a clause vested

in the mortgagee no other or different rights, as against the insurance company, than those possessed by the owner who procured the insurance. Owing to the very necessities of the situation, such protection was found to be wholly inadequate to warrant a loan of money on the security of improved property which could easily be destroyed by fire. In many instances the benefit of insurance might be entirely lost by the ignorance, carelessness or fraud of the owner of the property. Unless, therefore, some better protection for the interests of those, willing to lend money on the security of improved property, could be agreed upon, property owners would necessarily be deprived of the enjoyment of one of the most valuable incidents of their ownership. Thus began the development of what is now practically known in the insurance world as the "union" or "standard mortgage clause." We quote again from the clause attached to the policy in this case, "and this insurance, as to the interest of the mortgagee only therein, shall not be invalidated by any act or neglect of the mortgagor or owner of the within described property......nor by any change in the title or ownership of the property, nor by the occupation of the premises for purposes more hazardous than are permitted by this policy......provided, also that the mortgagee shall notify the company of any change of ownership or occupancy or increase of hazard which shall come to the knowledge of the said mortgagee," etc.

Serious defense is urged on the ground that the plaintiff Kilgallon at no time was the sole owner of the property insured, but that he, or he and his wife together, were the owners of but an undivided one-half thereof. The answer to this contention is twofold. The decisions of the Circuit Court of Appeals of the 8th Federal Circuit have been everywhere recognized as of much weight, even in the consideration of questions as to which the courts of the individual states may properly determine their own policy. In Syndicate Insurance Co. v. Bohn, 65 Fed. Rep., p. 165, that court had to deal with a case

where a policy of insurance, as between the company and the insured, was void from the moment it issued. This situation resulted from the fact that the insured had at one time been the sole owners of the property in question and during their ownership had procured valid insurance against fire loss. They conveyed the property to a corporation and afterwards renewed the policies of insurance in their own name, without any notice to the insurance company of the fact that they had parted with the title. In these policies the owner of a mortgage upon this property had been protected by a mortgage clause substantially, if not literally, like the one before us. In determining that the right of the mortgagee to recover was not destroyed by the fact that the mortgagors themselves could have recovered nothing, SANBORN, J., in a learned opinion, thus reasons out the questions involved: "The agreement evidenced by this mortgage clause was therefore a valid contract between the mortgagee and the insurance companies, made upon sufficient consideration for the evident purpose of protecting the indemnity guaranteed to the mortgagee by these companies against destruction by any act or neglect of the mortgagors. Was it that contract that the indemnity of the mortgagee should not be protected against any prior act or negligence of the mortgagors? There is no such restriction in the contract. It provides that the mortgagee's interest shall not be invalidated by any act or neglect of the mortgagors, by any occupancy or vacancy or by any change of title or possession of the premises, provided that the mortgagee shall notify the insurance company of any change of ownership, etc.,......It provides that when the insurance company pays to the mortgagee any loss under the policy, for which it claims that no liability to the mortgagors existed, it shall be legally subrogated, etc.,......and it finally provides that if the mortgagee assigns the mortgage, the agreement contained in the mortgage clause shall be binding between the insurance companies and the assignee, without notice

to the company of the assignment. What apter terms could be chosen to effect a separate insurance on the interest of the mortgagee; to free that insurance from any possible influence of "any act or neglect of the mortgagors and to make it dependent solely on the course of action of the mortgagee and the insurance company? None occur to us. And these terms are found in a contract between the mortgagee and the insurance company. They secure to the insurance company certain rights in the contemplated contingency that the mortgagee's contract of insurance may be valid when that of the mortgagors is void, and they expressly provide that this contract shall run with the mortgage. When this mortgage clause was attached to the policies in suit, it had been introduced and generally adopted by insurance companies and mortgagees to secure indemnity to the latter. The purpose of this introduction and adoption had been to protect that indemnity against every act and neglect of the mortgagors, whether prior or subsequent to the issue of the mortgage indemnity clause. Ten years before the highest judicial tribunal of the State of New York (Hastings v. Insurance Co., 73 N. Y. 141) had declared that a mortgage clause which contained these provisions accomplished that purpose, and every court whose attention had been called to the question had approved that decision." Were it necessary now to adopt or reject the view there accepted by the circuit court of appeals, it would be difficult to escape a conclusion supported by such persuasive reasoning and buttressed by such substantial authority. It would answer every contention of the defendant in the present case as to the line of defense we are now considering. But we do not think it necessary to go so far, and therefore it is wiser to leave the ultimate attitude of the courts of Pennsylvania on that question open for further consideration.

The written commission of the local agent who issued the policy in question, was put in evidence, and from it we learn that such agent was authorized to receive pro-

posals for insurance, to receive moneys for the same, and to countersign and issue policies of insurance, etc.  The act of such an agent, done within the apparent scope of the authority thus conferred, was the act of the company, and the knowledge of such agent obtained in the discharge of his duties was the knowledge of the company.  The record before us does not exhibit the written and recorded evidences of the title.  It appears to have been generally conceded at the trial that at some time in the past, the father of the legal plaintiff and the ancestor of the use-plaintiff, were tenants in common of a tract of land containing something over three acres, each owning the undivided half.  It also appears to have been assumed that the legal plaintiff, or he and his wife together, had succeeded to the title of his father.  He testified that after having held the whole of the tract in common for some years, he became desirous of having it parted, so that he might enjoy his own portion of it in severalty.  He testified that he communicated his wishes on this subject to Stark, or his predecessor in title, and that it was agreed the property should be divided and that the necessary work on the ground should be performed by a surveyor named by Stark.  The plaintiff went and employed him, brought him to the ground and he ran a line which divided the property into two equal parts and drove the stakes necessary to mark the line.  For a number of years thereafter the plaintiff occupied his acre and a half, or thereabouts, in severalty, while the use-plaintiff Stark in like manner occupied his portion of it until he sold it to a coal company, which now owns it.  The plaintiff had insured in his own name the building on his end of the property during a number of years, and no one questioned his right.  When he took out the policy in suit, he had concluded to increase the amount of the insurance he had previously carried and had the company's agent come to the property to examine it for himself and determine whether or not the company would approve an increase in the amount of in-

surance. At that time he declares he laid the whole situation with regard to the title before the agent, and not only told him of the partition that had been effected, but showed him the line the surveyor had run and marked on the ground, and thus communicated to the company every fact necessary for it to know in relation to the title to the property it was about to insure. The agent who was a witness made no denial of this testimony. The company through its agent issued its policy to the legal plaintiff as if he were the owner of the property, received and retained the compensation it demanded for such insurance and carried the same without question until the time of the fire. We cannot see on what legal or moral ground it can now be heard to declare that at most it insured but the undivided one-half interest in the property and that the verdict of the jury representing the value of that property should be cut in two. This would simply result in permitting the company to escape one-half the liability it was paid to assume. Not by any possibility do we think it could be in any danger of another action at the instance of Stark, with whom it never contracted, nor is there any other individual who could begin or maintain such an action. On the ground, therefore, that the company was visited with knowledge of the exact condition of the title before it issued its policy, we conclude it ought not now be heard to say that the plaintiff had forfeited his right to recover, or any part of it, because he can exhibit no paper title as the sole owner of the property. In an action like this we cannot adjudicate the title. We have neither the parties nor the legal machinery to judicially determine in whom the ownership, in fact and in law, resides. We simply say to the company the policy contained a certain provision that would enable you, in a proper case, to take defense along certain lines. You may, if you choose, decline to avail yourself of such a defense; or you may so act towards the assured that the law will not permit you to use it. That possible issue is not then litigated, it simply dis-

appears from the controversy. This consideration would shatter the defense here set up upon principles heretofore frequently recognized by the courts of the State of Pennsylvania: Clymer Opera Co. v. Ins. Co., 50 Pa. Superior Ct. 639. For this reason we do not undertake to declare at this time, as the final judgment of this court, that the terms of the contract created by the mortgagee clause would prevent the insurance company from advancing and maintaining such a defense as we have been considering. We prefer to rest our judgment on the ground that the knowledge of the agent estopped the company taking the defense set up.

Upon a review of the whole record, we are satisfied that the learned court below steered a true course in disposing of the various questions so earnestly urged there and here and the assignments of error must therefore be overruled and the judgment affirmed.

DISSENTING OPINION BY PORTER, J.:

The policy upon which this action is brought was dated September 3, 1914, ran for the period of three years and by it the defendant company insured Daniel Kilgallon against loss or damage by fire, to the amount of one thousand dollars, to a frame building. Kilgallon and his wife, the owners, having executed a mortgage upon the property to Joseph M. Stark, there was, on May 1, 1916, attached to the policy a mortgage clause in the usual form, providing that "Loss or damage, if any, under this policy, shall be payable to Joseph M. Stark as first mortgagee as his interest may appear, and this insurance, as to the interest of the mortgagee only therein, shall not be invalidated by any act or neglect of the mortgagor or owner of the within described property," and then followed a recital of the conditions usually embraced in such clauses. The building was destroyed by fire on August 20, 1916, and this action was subsequently brought upon the policy. The defendant filed an affidavit of defense alleging (1) That the plaintiff

was not the owner of the building and had no insurable interest therein. (2) That the building in question had been vacant and unoccupied for a long period of time and, therefore, the policy had by its express terms, become void, and (3) That the value of the building would not exceed one hundred dollars. At the trial evidence was produced bearing upon all three of the questions thus raised and the court submitted the second and third questions to the jury with instructions which involved no substantial error, with the result that the jury upon those questions found in favor of the plaintiff. The court withdrew from the jury any question as to the ownership of the property destroyed by fire. This, in my opinion, was an error.

While the opinion filed by the court affirming the judgment appealed from expresses views as to the effect of such a mortgage clause as that with which we are now dealing, which would deprive the insurer of any defense founded upon lack of title of the insured, the mortgagor, at the time the policy issued; it expressly declines to finally commit the court to that doctrine and leaves it open for future consideration. This renders it unnecessary to say more upon this particular point than that, in my opinion, the views are not sustained by the decisions of the Supreme Court of Pennsylvania. Leaving entirely out of consideration, however, any covenant of the policy which would have worked a forfeiture because the title of Kilgallon was not that of sole and unconditional owner, the question of his ownership of the property was still material to be considered in this case. There had been no change of ownership after the policy issued, nor after the mortgage was executed, nor for years before either of said events. No matter how exacting be the construction put upon the mortgage clause, the only effect of that clause was to protect the interest of the mortgagee, in the building insured, against loss by fire; it certainly did not convert it into a policy insuring the title. The loss, if any, under the policy was

made payable to Joseph M. Stark, as first mortgagee, as his interest may appear. Now it is very clear in this case that the only interest of Stark, as mortgagee, was a lien upon the estate of Kilgallon in the property. If Kilgallon was the sole owner then Stark's mortgage gave him an insurable interest in the entire property, but if Kilgallon owned only one undivided half of the property then Stark's interest, as mortgagee, was limited to that undivided half. A policy of insurance upon property in which the insured has no interest and the owner of which he does not represent is a gambling contract pure and simple, and void, as against public policy. The owner of an undivided or contingent but insurable interest in property may insure that interest, but the contract being one of indemnity he cannot in the event of a loss recover more than the amount of his loss. He cannot recover the amount which he would have been entitled to recover had he been the sole owner. These principles are enforced for the purpose of removing from an insured the temptation to perpetrate fraud and crime; where there is no interest there can be no loss: State Mutual Fire Insurance Co. v. Roberts, 31 Pa. 438; Imperial Fire Insurance Co. v. Dunham, 117 Pa. 460.

The plaintiff offered as evidence of ownership of the property the will of Patrick Kilgallon, which devised the undivided half of a tract of three acres upon which the building stood to Daniel Kilgallon and his wife. This vested in the legal plaintiff and his wife title to one-half of the building in question, as tenants by entirety. Kilgallon testified that at that time the other one undivided half of the property was owned by William S. Stark, that he proposed to Stark that they should have the property divided, that Stark said "All right. So we got talking, and he said, I advise you to hire Mr. Chapman from Port Blanchard. He is the most capable man on doing it." He further testified that he employed Mr. Chapman and his son, "and they came there and surveyed it, I think on a Thursday, and drove their stakes,

the dividing line, and from that time afterward, what I considered was the Starks' was a common." He testified that he subsequently built a fence along the dividing line, which was afterwards broken down. He further testified, however, that he never had any other talk with William S. Stark about the alleged partition, never told him what the Chapmans had done, never showed him a map which he alleged the Chapmans had made and never spoke to Stark about it afterwards. No other evidence of any kind was offered by the plaintiff in support of his assertion that there had been a parol partition of the property. Whether such evidence was sufficient to warrant a finding that there had been a parol partition, under the terms of which Kilgallon and his wife had become the sole owners of the building, seems doubtful, but let it be conceded that it was. Certain it is that if that evidence had stood alone the court would not have been warranted in passing upon the question as matter of law, the question ought to have been submitted to the jury. But that was not the only evidence upon that point which was presented at the trial. Joseph M. Stark, the mortgagee, and equitable plaintiff here, testified that he had, ten or twelve years prior to the time of the trial in the court below purchased of William S. Stark the undivided one-half interest in the property in question and that he had held title thereto until 1912, at which time he conveyed said undivided one-half interest to the Madeira Coal Company. Stark testified that after acquiring title to the one undivided half of the property he had a conversation with Daniel Kilgallon, the legal plaintiff, in which he told Kilgallon that he owned all the coal underlying the three-acre tract and one-half of the surface and that he wanted the surface divided. "I told him I wanted the surface divided, and I thought we could divide it without going into court, and have a partition made, and he said he thought so too. That is as far as we ever got with it." He distinctly testified that at the time he held this conversation with Kilgal-

lon the latter said nothing about any claim that there had already been a partition of the property, between Kilgallon and William S. Stark, predecessor in title of Joseph M. Stark. Stark testified that the ground immediately adjacent to the house had prior to the fire been used by the Madeira Coal Company as a mule yard. Stark's testimony would certainly have warranted the jury in finding that there never had been a parol partition, that Kilgallon and his wife only owned one undivided half of the property and that his (Stark's) mortgage was a lien upon only that undivided half. Stark was testifying against his own interests, and there was nothing in his testimony which warranted the court in disregarding it. Being of opinion that the court erred in withdrawing from the jury the question of the quantity of the interest of both the legal plaintiff and the mortgagee, I am constrained to dissent from the judgment entered by the court upon this appeal.