## Ferree *versus* The Oxford Fire and Life Insurance, Annuity and Trust Company.

67    373
f212    391

One of the conditions to a policy of insurance was that it should not be assigned without the consent of the company endorsed on it. In case of assignment without such consent, whether of the whole policy or an interest in it, the liability of the company should thenceforth cease. The assured assigned the policy as collateral security for a lien against the property insured without obtaining the consent of the company; the property was burned; afterwards the assured paid the lien. *Held*, that he could not recover for the loss, not having had the consent of the company to the assignment.

January 18th 1871. Before THOMPSON, C. J., READ, AGNEW and WILLIAMS, JJ. SHARSWOOD, J., at Nisi Prius.

Error to the Court of Common Pleas of *Chester county*: Of January Term 1871, No. 179.

This was an amicable action of covenant and case stated, entered August 19th 1870, between T. Waters Ferree, plaintiff, and The Oxford Fire and Life Insurance, Annuity and Trust Company, defendants.

The case stated showed the following facts:—

On the 14th of January 1869 the defendants, by policy No. 65, insured the property of the plaintiff, amongst other things a frame house for $4000.

The third condition of insurance annexed to the policy is as follows:—

" Policies of insurance subscribed by this company shall not be assignable without the consent of the company, expressed by

[Ferree *v.* Oxford Fire and Life Insurance Co.]

endorsement made thereon. In case of assignment without such consent, whether of the whole policy or of any interest in it, the liability of the company in virtue of such policy shall thenceforth cease; and the company reserves to itself the right to elect either to consent to the transfer, or return a rateable proportion of the premium and cancel the policy. In case of claim for loss or damage on a policy assigned, where there is no actual sale or transfer of the property insured, proofs of loss shall be made by the assured in conformity with the conditions of this policy in like manner as if no assignment had been made; otherwise this policy shall be void and of no force or effect whatever, and all liability on the part of the company shall cease."

The following assignments were endorsed on the policy:—

"For valuable consideration, I do hereby assign and set over unto Amos K. Hanna, of Oxford, Chester county, Pa., and Eber Anderson, of West Chester, their heirs and assigns, all my right, title and interest on the policy of insurance, and all the benefits and advantages to be derived therefrom, as collateral security for the payment of money loaned.

"Witness present, John E. Leonard.

"T. WATERS FERREE. [L.S.]"

"For valuable consideration, I do hereby assign and set over unto L. A. W. Pyle, of West Chester, her heirs and assigns, all my right, title and interest on the policy of insurance, No. 65, for $4375, of Oxford Fire and Life Insurance Annuity and Trust Company, of Oxford, Chester county, Pa., issued to T. Waters Ferree, dated January 14th 1869, and all the benefits and advantage to be derived therefrom, as collateral security for the payment of money loaned to said Ferree, on a judgment which I have assigned to said L. A. W. Pyle.

"Witness my hand and seal, this 23d day of August 1869.

"EBER ANDERSON. [L.S.]"

Neither of these assignments was submitted to or approved by the defendants. On the 20th of January 1870, the plaintiff paid to the defendants $8.33, annual payment for the continuance of the said insurance for the year commencing the first Monday of January 1870. On the 18th of February 1870, the said building was totally destroyed by fire. The plaintiff has continued to be the owner of the premises insured ever since the policy was issued. He has, since the fire, paid the debts to secure which the policy was assigned. He gave notice of the fire to the defendants, according to the conditions of insurance. He demanded the said sum of $4000 of the defendants, which they refused to pay.

The question is, whether, under these circumstances, the plain-

tiff is entitled to recover. If the court shall be of opinion with the plaintiff, judgment to be entered in his favor for $4000, with interest from June 18th 1870. If otherwise, judgment to be entered for the defendants.

The court entered judgment for the defendants, Butler, P. J., delivering the following opinion:—

"The case turns on the construction of the third condition annexed to the policy. Whatever is determined to be its meaning will govern the rights of the parties. It is their contract, and they must abide by it.

"Then what is its meaning? It declares that 'policies of insurance subscribed by this company shall not be assignable without the consent of the company expressed by endorsement made thereon. In case of assignment without such consent, whether of the whole policy or of any interest in it, the liability of the company in virtue of such policy shall thenceforth cease; and the company reserves to itself the right to elect to consent to the transfer or to return a rateable proportion of the premium and cancel the policy. In case of claim for loss or damage on a policy assigned, where there is no actual sale or transfer of the property insured, proof of loss shall be made by the assured in conformity with the conditions of this policy, in like manner as if no assignment had been made; otherwise this policy shall be void and of no effect whatever, and all liability on the part of the company shall cease.'

"Such is the language used by the parties. The plaintiff argues that it was intended simply to prohibit a transfer of the property or interest insured, as was held in Carpenter v. The Insurance Co., 16 Peters 496. But Carpenter v. The Insurance Co. bears no resemblance to this case, and the language here employed precludes such a construction. It is the policy that 'shall not be assignable without consent,' and it is the assignment of such policy that is to terminate the liability of the company. In Carpenter v. The Insurance Co. the terms used were: 'The interest of the assured in this policy is not assignable unless by consent of the company in writing; and in case of any transfer or termination of the interest insured, either by sale or otherwise without consent, the policy shall be void. Of which the court said: 'Now the interest here last spoken of manifestly is the interest of the owner in the premises insured, and not merely his interest in the policy.' The difference between this language and that now under consideration is too clear to justify comment. Here it is a transfer of the policy, expressed in the plainest language, that is to forfeit the rights of the insured. If the language were even doubtful, we would hesitate to give it the construction suggested, for the reason that a transfer of the interest insured—the property—

[Ferree *v.* Oxford Fire and Life Insurance Co.]

would terminate the liabilities of the insurer without such prohibition.

" Again, it is argued for the plaintiff that if the prohibition applies to an assignment of the policy, it is to an absolute assignment—a transfer of all the assured's interest in it—and not a transfer as collateral security merely.

" Such an absolute transfer, except where accompanied by a sale of the property insured, would also terminate the liability of the company without any prohibition in the policy.   The law will not permit an insurance to one not interested in the property, nor allow a recovery where the insured, or owner of the policy, is not so interested at the time of loss.   Where the transfer is as collateral security, the recovery is by the assignor, on the ground that he still retains an interest.   But for this subsisting interest connected with the ownership of the property, there could be no recovery by any one.   It was not therefore against an absolute transfer unaccompanied by a sale of the property, that the prohibition was directed.   Such a transfer, as before observed, would of itself forfeit the policy.

" But an absolute transfer accompanied by a sale of the property would not of itself forfeit it.   For although it was at one time held that policies against fire are not in their nature assignable, the modern rule is otherwise.   And therefore stipulations against assignment are resorted to.   And such an assignment—an absolute transfer to a purchaser of the property—it is very clear the language under consideration does embrace and prohibit.   But does it go no further ?   Does it not contemplate other assignments—where the property has not been sold ?   Clearly it does, otherwise how are we to understand these words : ' In case of a claim for loss or damage on a policy assigned where there is no actual sale or transfer of the property insured, proof of loss shall be made by the assured, as if no assignment had been made ?' The force of this language is irresistible.   The prohibition was intended to embrace assignments not accompanied by a transfer of the property.   And as the only assignments of this character that the company has any interest in prohibiting (the only assignments not accompanied by a transfer of the property which do not of themselves release the company) are those made as collateral security, it would seem to follow that it was such assignments that were contemplated.   Any other construction would be illogical and unjust.   But as if to guard against the possible danger of such injustice, the company has inserted additional language which precludes any other construction.   It is not only an assignment of the policy that is to release the company, but an assignment of any interest in it.   ' In case of assignment, whether of the whole policy or of any interest in it, the liability of the company * * * shall thenceforth cease,' is the language

[Ferree *v.* Oxford Fire and Life Insurance Co.]

employed. It has not been suggested that one who takes a policy as collateral security has not an 'interest in it,' and it will not be.

"But it is argued, that as the company cannot be injured by such an assignment, it has no motive to prohibit it, and did not therefore intend to do so, notwithstanding the plain import of the language used. Such conjecture in respect to motive would be too uncertain a guide to justify a departure from the ordinary meaning of the terms employed.

"But is it true that the company has no motive to prohibit such a transfer? Insurance against fire is a contract of indemnity to the insured. His character and his interest in the property enter into the calculations of the insurer. A risk exceeding three-fourths the value of the property will not generally be taken. Encumbrances are objectionable, and are usually inquired after, for as they increase the interest of the owner diminishes. True, if honest, he is interested in the payment of his debts. But this is a different interest from that which a man feels in the preservation of property which he can continue to enjoy—which belongs to him and not to his creditors. If, then, the privilege of transferring the policy as collateral security for goods purchased or money borrowed, tends to the increase of encumbrances, the company has a motive to prohibit it. That it does so tend, common experience proves. A judgment or mortgage covering the value of the property, accompanied by a transfer of the policy, is worth just as much more in consequence of such transfer as the value of the policy itself.

"But what is much more important, is the fact that such a transfer may create an interest directly hostile to that of the insurer. If the transferee is a second or subsequent encumbrancer, his interest may be in the destruction of the property. As we have seen, the owner cannot be insured to its entire value, and a stranger to it in any amount whatever; because, in the first case there would be no interest to preserve it, and in the second an interest to destroy it. But this interest to destroy would be no greater than that of such transferee of the policy may be. If the buildings be preserved, the lien before his will take their value; if destroyed, he will get it; and the circumstances may be such that he can get nothing else—as where the preceding liens cover the value of the property. But suppose the transfer to be on account of indebtedness without lien. Then the only way in which it can be of any value whatever, is through the destruction of the property.

"The insurer has, therefore, a motive, and a very strong one, for keeping the subject of collateral assignments within his control. And the argument based upon the hypothesis that he has not, consequently fails.

"And for the same reason, the suggestion that the law will not

[*Ferree v.* Oxford Fire and Life Insurance Co.]

permit such a prohibition (based upon the same hypothesis), fails. It is true a debt may be transferred; the debtor cannot stipulate against it. And money actually due upon a policy is but a debt. The insurer cannot, therefore, prohibit its transfer. But such a case bears no resemblance to a transfer of the contract of indemnity.

"The only case we have been able to find bearing much resemblance to the one before us, is Smith *v.* The Insurance Co., 1 Hill N. Y. (and 3 Hill). But there the resemblance is very close. The assignment was in terms absolute. But being on account of indebtedness, this is unimportant. In effect it was limited to securing the debt: Fulton *v.* Brooks, 4 Cush. (Mass.) The provision against assignments was almost, if not quite, identical with that contained in the policy before us. The plaintiff's situation was such as to excite sympathy; and the court manifested a desire to relieve him by confining the provision to a transfer of the property, or of the policy with the property, but found it impossible to do so without perverting the language employed. The policy was therefore held to be forfeited by the transfer without approval."

The plaintiff took a writ of error, and assigned for error; not entering judgment for the plaintiff.

*R. T. Cornwell* (with whom were *W. Darlington* and *R. E. Monaghan*), for plaintiff in error.—The 3d condition has reference only to such assignments as accompany the transfer of the property, not where the assignment is as collateral security. A collateral assignment is but a pledge that the amount that may be recovered in case of loss, shall first be applied to the payment of the debt due the assignee, and does not amount to a transfer of any interest of the assured in the policy: Peabody *v.* The Ins. Co., 20 Barb. 339; Hill *v.* Ins. Co., 9 P. F. Smith 474; Ins. Co. *v.* Stewart, 7 Harris 45; Masters *v.* Ins. Co., 11 Barb. 624; 2 Parsons on Contracts 451. The reasons for the prohibition apply only to such assignments as accompany the sale of the property assured: Ins. Co. *v.* Roberts, 7 Casey 438; Ins. Co. *v.* Berger, 6 Wright 291; Finley *v.* Ins. Co., 6 Casey 311. The construction of the condition is to be most favorable to the assured and against the insurers: The Ins. Co. *v.* Berger, *supra;* Buckley *v.* Garrett, 11 Wright 204; The Ins. Co. *v.* Cropper, 8 Casey 351; Angell on Insurance 247; Carpenter *v.* The Washington Ins. Co., 16 Peters 495. The assignment of a policy vests an equitable interest in the assignee. Such assignment may be valid without the consent of the insurers: 2 Parsons on Contracts 354, 355; Lazarus *v.* Ins. Co., 19 Pick. 81. Conditions are not sustained when they infringe upon the essential enjoyment and independent rights of property, and tend manifestly to public inconvenience: 4 Kent's Com. 131; Goit *v.* The Ins. Co., 25 Barb. 189; Court-

ney *v.* The Ins. Co., 28 Id. 116; The Ins. Co. *v.* Helfenstine, 4 Wright 289.

*G. F. Smith* (with whom were *W. B. Waddell* and *P. F. Smith*), for defendants in error.—The plaintiff having but a judgment had no interest in the property; this would have been an answer to any claim he might have made on the company for indemnity for the loss: Grevemeyer *v.* Southern Mutual Insurance Co., 12 P. F. Smith 340. The plaintiff, at the time of the fire, had no interest in the policy. The policy being separated from an interest in the subject of it, was of no force or obligation: Hill *v.* Cumberland Valley Mut. P. Co., 9 P. F. Smith 474; s. p. 3 Kent's Comm. 375. The third condition is against assigning the policy; it does not speak of property: Smith *v.* Saratoga M. F. Ins. Co., 1 Hill 497.

The opinion of the court was delivered, February 20th 1871, by

READ, J.—On the 14th of January 1869, the defendants issued to the plaintiff a policy of insurance for $4000, on certain premises against fire for one year from that date, who assigned the same to Amos K. Hanna and Eber Anderson, as collateral security for money loaned him, and on the 23d of August 1869, the said Eber Anderson assigned the same to L. A. W. Pyle, to whom he had assigned the judgment which he held. Neither of these assignments were submitted to or approved by the defendants. On the 20th of January 1870, the plaintiff paid to the defendants $8.33, the annual payment for the continuance of the said insurance for one year, and on the 18th of February the building was totally destroyed by fire, since which he has paid the debts to secure which the policy was assigned.

The defence is, that by the third condition annexed to the policy the liability of the defendants ceased by reason of the above assignments, which were made without the consent of the company expressed thereon. In this case no consent was given to either of the assignments, nor was there any waiver of the condition in any manner or form by the defendants. "Policies of insurance," says the condition, "subscribed by this company, shall not be assignable without the consent of the company expressed thereon. In case of assignment without such consent, whether of the whole policy or of any interest in it, the liability of the company in virtue of said policy shall thenceforth cease." This condition is a perfectly legal one: Smith *v.* Saratoga County Mutual Fire Insurance Co., 1 Hill 497; Same *v.* Same, 3 Hill 508; 1 Phillips on Insurance 477; Angell on Fire and Life Insurance 249, 251. The remaining part of the third condition has no bearing on the present case, having no application when the liability of the company has entirely ceased.

[Ferree *v.* Oxford Fire and Life Insurance Co.]

We have examined the authorities cited by the plaintiffs and find nothing affecting in any way this condition or its plain and obvious meaning.

Judgment affirmed.

THOMPSON, C. J., dissented.