Clarke & Cohen, Appellants, *v.* Real to Use of Stroudsburg Nat. Bank.

Argued December 11, 1931.

Before Trexler, P. J., Keller, Linn, Gawthrop, Cunningham, Baldrige and Stadtfeld, JJ.

*Arthur S. Arnold,* and with him *George Garrison Shafer,* for appellant.

*F. B. Holmes,* for appellee.

OPINION BY KELLER, J., March 5, 1932:

On May 1, 1928 an action in assumpsit was brought in the court of common pleas of Monroe County by Margaret Real, to use of Stroudsburg National Bank, against Albany Insurance Company, to May T., 1928, No. 74, upon a $5,000 policy of fire insurance for the loss sustained by reason of a fire, which occurred on September 3, 1927. At the same time similar actions were brought against twelve other insurance companies. The total insurance covering Mrs. Real's property, real and personal, was $78,000, apportioned as follows:

| | |
|---|---:|
| Hotel building | $50,000 |
| Household furniture, etc. | 10,500 |
| Souvenirs kept for sale | 1,000 |
| Laundry building and garage | 3,000 |
| Laundry machinery and equipment | 1,250 |
| Apparel, linens, etc. in laundry | 250 |
| Dwellinghouse | 12,000 |
| | $78,000 |

Only the first three items were affected by the fire.

Each policy covered a proportionate part of all the foregoing items of insurance and contained the following provision:

"Loss, if any, on building only, payable to the Stroudsburg National Bank et al. as interest may appear. Mortgagee clause 'A' attached."

Appearances were entered for the defendants and on October 8, 1928 a petition was presented by the defendant, Albany Insurance Co., setting forth that on September 8, 1927 the said Margaret Real had assigned to Clarke & Cohen (who had been employed by her to advise and assist in the adjustment of the claim) all moneys due under said policy to the extent of five per cent of the adjusted fire loss, of which notice had been duly given defendant by said Clarke & Cohen; that subsequent to the institution of said suit the loss or damage suffered by Mrs. Real by reason of said fire had been settled and adjusted as follows:

| | |
|---|---|
| On building | $22,964.80 |
| On household furniture | 8,882.27 |
| On souvenirs | 261.25 |

of which the defendant's pro rata liability was $1,-795.73; that following said adjustment the defendant had issued its check for said amount to Margaret Real, as owner, Stroudsburg National Bank as mortgagee, and Clarke & Cohen, as assignee, and transmitted same to counsel for Stroudsburg National Bank, who refused to accept it by reason of the inclusion of the assignee, Clarke & Cohen; that said Clarke & Cohen had made claim for the percentage due them and had signified their intention to institute suit against the defendant for said amount, if it was not paid them; that the identical money for which suit was brought was thus claimed by Margaret Real, Stroudsburg National Bank and Clarke & Cohen; that defendant had no interest in the proceeds payable under said policy but was liable to be put to the expense of defending

two actions, and being compelled to pay a portion of said money twice. Wherefore it prayed that said Margaret Real, Stroudsburg National Bank and Clarke & Cohen might be required to interplead and an issue in interpleader be framed between them to determine who was entitled to said fund; and that the defendant be ordered to pay said fund into court and be thereupon relieved of all further liability under said contract of insurance.

The same day a rule to show cause, as prayed for, was granted on Margaret Real, Stroudsburg National Bank and Clarke & Cohen, returnable October 25, 1928, service of which was duly accepted by all of said parties.

On November 5, 1928, the court ordered and decreed, "upon consideration of the defendant's petition *and by consent of all the parties in interest*" [i. e. the defendant insurance company, Margaret Real, Stroudsburg National Bank and Clarke & Cohen], by their attorneys, inter alia, that the defendant insurance company be permitted to pay ten per cent of the adjusted loss ($179.57) into court, provided it paid ninety per cent of such adjusted loss ($1,616.16) to the plaintiff within ten days, and that on such payment every liability of the said defendant on such policy be satisfied, discharged and extinguished; and:

"That a feigned issue be framed between Simon Clarke and Leon Cohen, partners trading as Clarke & Cohen, as plaintiffs, and Margaret Real, now to the use of the Stroudsburg National Bank as defendants, as upon a wager of ten dollars to try before a jury of the county the following questions, viz:

"1. Whether the said plaintiffs, Clarke & Cohen, acquired any right or title to the whole or any portion of the moneys paid in settlement of the loss accruing under said policy of insurance by virtue of a certain paper writing purporting to be signed by one Margaret Real on the eighth day of September, 1927, a copy of

which is annexed to the petition for interpleader filed by the defendant in this case.

"2. What sum of money, if any, is due to the plaintiffs out of the proceeds of said policy.

"3. What sum of money, if any, is due to the plaintiffs out of the proceeds of all the policies which were the basis of the suit in the list of cases hereinafter set out."

The order further directed the filing of the narr. in said feigned issue, within fifteen days, and of defendant's plea within a like time thereafter, and the joinder of issue by the usual replication; and that the order should likewise apply to twelve other actions brought by the plaintiff in the action against twelve other insurance companies, with provisions as to the effect of judgment in the issue, costs, etc., not necessary to be here stated.

Following this order, the defendant paid into court $179.57 and paid to the plaintiffs in said action $1,-616.16, together with all costs accrued, and was thereby discharged of all claims of said other parties, under the policy, which was, in effect, satisfied and extinguished.

The procedure, from this point on, should have been easy. A declaration, or narr., plea, and replication or similiter, in the time-honored form used for feigned issues as upon a wager, (usually framed by the pleader framing the declaration: 2 Chitty on Pleading 235-239, but settled by the court, if the parties cannot agree: Clark v. Douglass, 62 Pa. 408, 414) should have been filed and the issue would then have been ready for trial: Muhlenberg v. Brock, 25 Pa. 517; 2 Brewster's Practice, secs. 2748, 2749. Instead the plaintiffs in the issue filed a statement in assumpsit under the Practice Act of 1915, P. L. 483, to which defendant filed a demurrer. The plaintiffs then filed a formal declaration setting forth the issues as fixed by the order of the court, pursuant to the consent of all

the parties, in the form used for feigned issues upon a wager. [To this a plea in the usual form should have been filed by defendant denying the plaintiffs' right to any of the fund in dispute, and putting itself upon the country, and on the plaintiffs doing the like, the issue would have been ready for trial (2 Brewster's Practice, secs. 2749-2750). The very purpose of the feigned issue is "to determine some disputed rights without the formality of pleading and thereby to save much time and expense in the decision of a cause": III Sharswood's Blackstone's Comm. 452.] Instead, however, of doing so, the defendant filed a series of special pleas, which have no place in such an issue and should have been struck off and the defendant directed to file a formal plea limited to a denial of the assertions in the plaintiffs' declaration entitling them to the payment of the wager based on the issues fixed by the court in its order. Plaintiffs moved the court to strike off the pleas filed by defendant, but before action by the court, a still more unusual step was taken. On December 24, 1930, F. B. Holmes and C. C. Shull, representing themselves to be trustees for certain creditors of Margaret Real, who were not parties either to the original action or to the issue, and had not asked to be substituted therein as defendants for Stroudsburg National Bank, filed a petition setting forth that Stroudsburg National Bank had assigned to them all its right, title and interest in and to the proceeds of the policies of insurance which had been paid into court, and praying that an order be made vacating and setting aside the issues awarded in all of said cases and permitting the petitioners to take out of court the money paid into court by the companies aforesaid. A rule to show cause was granted by the court and after answer filed by the plaintiffs and depositions taken by petitioners in support of the averments of their petition, the court (1) vacated and set aside the order of November 5, 1928, awarding a

feigned issue; (2) ordered the money paid into court pursuant thereto by the insurance company defendant to be paid to the petitioners as assignees of Stroudsburg National Bank, and (3) ordered Clarke & Cohen, the plaintiffs in the abortive issue to pay all costs accrued since the payment of the money into court, including the prothonotary's commission on the fund so paid in. From this order Clarke & Cohen have appealed.

The court below apparently treated the issue as if it were merely ancillary to some proceeding in equity, awarded for the purpose of informing the conscience of the court, and not binding upon it, and subject to the rules applicable to such issues, (Ringwalt v. Ahl, 36 Pa. 336; Hallowell's App., 20 Pa. 215; Com. v. The Judges, 4 Pa. 301; Ferree v. Thompson, 52 Pa. 353, 355). It was not. Such rules have "no application whatever to other feigned issues directed by the court for the purpose of determining disputed questions of fact according to the course of the common law. When the issue in question was made up, it was like any other issue of fact presented by the pleadings in an action at law, and subject to the same rules of practice as to trial, judgment, and all the incidents thereof. The question was whether the money in court belonged to the plaintiff or to the defendant": Black's App., 106 Pa. 344, 349. It is one of the defects of our legal nomenclature that the same term is sometimes applied to widely different things and care must always be taken as to the sense in which it is employed. The issue in this case was the common law form, used in England where separate actions of detinue were brought by two bailors, and in actions of quare impedit and writ of right of award, but early extended in Pennsylvania to actions of assumpsit, where a defendant being sued by one of two claimants to a fund, or part of it, admits the debt and disclaims all interest in the fund, and offers to pay the same into court,

and prays that the other claimant to the fund be required to come into court and interplead: Russell v. Church, 65 Pa. 9, 14 (SHARSWOOD, J.), 15 R. C. L. 221; 35 Am. Decisions 709, note to Shaw v. Coster, 8 Paige Ch. 339, 35 Am. Dec. 690. The practice is set out at some length in Brownfield v. Canon, 25 Pa. 299, (1855) pp. 301 and 302, and was recognized by our Supreme Court as late as the case of McKinley v. Mutual Life Ins. Co., 278 Pa. 300, (1924) where the proceeds of a life insurance policy accruing on the death of the insured were claimed by two persons, the court saying, p. 304: "Counsel for both sides treated the Act of 1836 [March 11, 1836, P. L. 76, sec. 4] as here applicable, and for the purpose of the case we have so considered it, although aside from the statute the issue prayed for should have been awarded under the common law." In fact, the Act of 1836, supra, in enumerating the powers conferred on the District Court for the City and County of Philadelphia, in section 4 et seq. only extended to that court the power exercised by the courts of common pleas under the common law of Pennsylvania to require rival claimants of a fund to interplead, and established the practice to be observed: Coates v. Roberts, 4 Rawle 100, 110, 111 (1833); Russell v. Church, supra, p. 14. This was then no issue awarded to inform the conscience of the court, but an issue of right, under the averments in the petition of the defendant insurance company, to refuse which would have been reversible error: McKinley v. Mutual Life Ins. Co., supra, p. 304; and with the merits of the rival claims, prior to the trial, the court was not concerned, beyond seeing that they were not merely colorable or frivolous or collusive: Ibid, p. 304. The court might, in awarding the issue, have settled the questions and directed them to be tried without further pleadings, but in this case, by the consent of the parties, adopted the ancient form of a feigned issue upon a wager,—which was recommended by Judge

SHARSWOOD in Clark v. Douglass, supra, p. 414—and having done so, should have framed the pleadings in the ancient and accustomed form, based on the questions as fixed and settled by the court, and proceeded to trial. We pointed out in the case of Fredericks v. Carson, 97 Pa. Superior Ct. 258, following Barnes v. Bamberger, 196 Pa. 123, 127, that after the *feigned* issue was awarded, there was no warrant for a summary judgment on the pleadings; that a disposition of the controversy by the court, without a jury, that is, on the pleadings alone and without a trial, was not contemplated. See also Schmidt v. Pittsburgh L. & T. Co., 256 Pa. 363, 369; Dormer v. Brown, 72 Pa. 404, 408. And this is especially so where, as in this case, the money has been paid into court, the insurance company discharged of all further liability to any of the parties, the policy of insurance extinguished, and the parties cannot be placed in the position they occupied before the issue was awarded. This does not mean that a jury must, of necessity, pass upon the matter, but that the case is not to be disposed of summarily by special pleadings, rules, or depositions in advance of trial, but is to go to trial in the orderly way, and after all the relevant evidence has been received on both sides, if there is then no question of fact to be submitted to the jury, the court may direct a verdict. That was what was decided in Landis v. Lyon, 71 Pa. 473, relied on by the court below, viz., that on the *trial* of the issue, the contested facts should be sent to trial by the jury and the questions of law retained by the court for its own decision, (p. 475). Cobb v. Burns, 61 Pa. 278, also cited by the court below, was an issue certified to the common pleas from the orphans' court, to inform the conscience of the latter, and should have been restricted to specific contested facts, which on being certified back to the orphans' court, could be used in deciding whether specific performance should be decreed; the whole sub-

ject could not be certified to the common pleas for that would be illegally delegating jurisdiction in specific performance to the common pleas (p. 281). It has no bearing on this case, for the common pleas had jurisdiction of the action brought against the insurance company and would have had jurisdiction of the threatened action by Clarke & Cohen, and the issue was to decide between the conflicting rights, and jurisdiction could be either in the common pleas, under the ancient practice at common law, or in equity by formal bill asking for an interpleader, depending on which of the two concurrent jurisdictions was adopted; and in this case the former was chosen. Fredericks v. Carson, referred to above, may also be noted on this proposition, for on the trial of the issue in that case, it developed that there was no disputed question of fact and after verdict in favor of the defendant, judgment non obstante veredicto was entered for the plaintiff and affirmed by this court. See Fredericks v. Carson, 104 Pa. Superior Ct. 541.

Furthermore, the court, in assuming the truth of the evidence taken by depositions on behalf of the petitioners in the rule to strike off the issue, was passing upon questions of fact which were for the determination of the jury on the trial of the issue. The loss payable clause in favor of Stroudsburg National Bank, in the policy, was expressly limited to the insurance on the building only, leaving the insurance on the furniture and other personal property payable to the insured, and, after loss, subject to assignment by her, or attachment at the suit of her creditors. Whether, subsequently, and before the assignment to Clarke & Cohen, Mrs. Real assigned the insurance covering the personal property to Stroudsburg National Bank as collateral for her debt to it, or made it her appointee to collect and apply the proceeds to the payment of her loans, involves matters of fact, which would be for the jury to pass upon in case they found a valid

claim against the fund existing in favor of Clarke & Cohen. The delivery of the policy to Stroudsburg National Bank would not, of itself, amount to such an assignment or appointment, for as payee of the insurance on the building, under the loss payable clause limited to the insurance on the building, the bank had a right to the custody of the policy, and delivery of it to the bank on that account would not enlarge the rights of the bank so as to authorize it to collect the proceeds of insurance on the personal property and apply it to its loans against the insured. The case of Wells v. Archer, 10 S. & R. 412, cited by the court is open to no such construction. In that case the proof was that the policy had been expressly deposited in the defendant's hands ''as a security, as well for the sum then due to him, as for any loss which he might suffer by the respondentia bond,'' and the insurance company having paid the insurance money to the defendant, under a legal right, it was held he could not be required to refund it. Whether that decision is still the law, in view of the provision in the standard form of policy (See Act of May 17, 1921, P. L. 682, p. 735) that the policy shall be void if it be assigned before a loss, without the consent of the insurer, we need not decide; but see, Ferree v. Oxford Fire &c. Ins. Co., 67 Pa. 373, 379; Gould v. Dwelling House Ins. Co., 134 Pa. 570, 590. It is enough to hold that mere delivery of the policy to an appointee or payee under a limited loss payable clause, does not authorize the latter to hold it beyond the terms of the appointment.

But the court went further and held that the bank was entitled to the entire proceeds of the policy under the union or standard mortgagee clause ''A'' affixed to the policy. [See margin note 1.]

NOTE 1. Mortgagee Clause—"A." Loss or damage, if any, under this policy, shall be payable to Stroudsburg National Bank, first, and secondly to Stroudsburg National Bank, trustee, mortgagee (or trustee) as interest may appear, and this insurance, as to the interest of the mortgagee (or trustee) only therein, shall not be invalidated by any act or neglect of the mortgagor or owner of

Three things prevent our accepting this view. First. The action in the court below was not brought on the "independent contract of insurance" contained in the mortgagee clause (Knights of Joseph B. & L. Assn. v. Mechanics Fire Ins. Co., 66 Pa. Superior Ct. 90), but on the policy contract insuring Margaret Real. The legal plaintiff in the action was Margaret Real; the bank was only use plaintiff claiming in her right: State Mutual Fire Ins. Co. v. Roberts, 31 Pa. 438; Flaherty to use v. Germania Ins. Co., 1 W. N. C. 352; Cooley's Briefs on Insurance, Vol. 2, p. 1267. Had the suit been founded on the mortgagee clause as a separate and independent contract, the bank would itself have been the legal plaintiff. See Knights of Joseph B. & L. Assn. v. Mechanics Fire Ins. Co., supra; Reed v. St. Paul F. & M. Ins. Co., 67 Pa. Superior Ct. 110; Beaver Falls B. & L. Assn. v. Allemania Fire Ins. Co., 101 Pa. Superior Ct. 109, reversed, on another point, by

---

the within described property, nor by any foreclosure or other proceeding or notice of sale relating to the property, nor by any change in the title or ownership of the property, nor by the occupation of the premises for purposes more hazardous than are permitted by this policy; provided, that in case the mortgagor or owner shall neglect to pay any premium due under this policy, the mortgagee (or trustee) shall, on demand, pay the same.

Provided, also, that the mortgagee (or trustee) shall notify this company of any change of ownership or occupancy or increase of hazard which shall come to the knowledge of said mortgagee (or trustee) and, unless permitted by this policy, it shall be noted thereon and the mortgagee (or trustee) shall, on demand, pay the premium for such increased hazard for the term of the use thereof; otherwise this policy shall be null and void.

This company reserves the right to cancel this policy at any time as provided by its terms, but in such case this policy shall continue in force for the benefit only of the mortgagee (or trustee) for 10 days after notice to the mortgagee (or trustee) of such cancellation and shall then cease, and this company shall have the right, on like notice, to cancel this agreement.

Whenever this company shall pay the mortgagee (or trustee) any sum for loss or damage under this policy and shall claim that, as to the mortgagor or owner, no liability therefor existed, this company shall, to the extent of such payment, be thereupon legally subrogated to all the rights of the party to whom such payment shall be made, under all securities held as collateral to the mortgage debt, or may at its option, pay to the mortgagee (or trustee) the whole principal due or to grow due on the mortgage with interest, and shall thereupon receive a full assignment and transfer of the mortgage and of all such other securities; but no subrogation shall impair the right of the mortgagee (or trustee) to recover the full amount of their claim.

Supreme Court 305 Pa. 290; Hastings v. West Chester Fire Ins. Co., 73 N. Y. 141; Smith v. Union Ins. Co., 25 R. I. 260, 55 Atl. 715; Ins. Co. v. Bohn, 65 Fed. 165, 27 L. R. A. 614; Cooley's Briefs on Insurance, Vol. 2, p. 1269. Second. The standard mortgagee clause covers and relates only to insurance on real property, or personal property so annexed to the real estate as to be bound by a mortgage on the real estate. This is apparent from the language of the clause itself as well as the provision of the standard policy authorizing it, (Act of May 17, 1921, P. L. 682, p. 737), and is clearly set forth by Judge KEPHART in the opinion in Knights of Joseph B. & L. Assn. v. Mechanics Fire Ins. Co., supra, p. 96; and by Judge HEAD in Bell Co. v. Monroe Hotel Co., 73 Pa. Superior Ct. 460, 463, 464; the latter saying: "It appears from the affidavit of defense that some of the policies which contained the rider clause referred to [that is, the standard mortgagee clause] were written to protect the mortgagor against loss on personal property, wearing apparel, and the like. The amount of premium that would be owing for such insurance bought no protection for the mortgagee because such property was outside the mortgage." See also, Wilcox v. Mutual Fire Ins. Co., 81 Minn. 478; 84 N. W. 334. Third. It was developed in the depositions taken by the petitioners for the rule to strike off the issue, that Stroudsburg National Bank was not a mortgagee at all; that it held no mortgage against the insured premises but was only a judgment creditor. The standard mortgagee clause is not applicable to judgment or lien creditors, apart from mortgage liens or deeds of trust similar to and partaking of the nature of a mortgage. Again this is apparent from the very language of the clause, from the provision of the Act of Assembly which permits the insertion of the clause in the policy, (Act of 1921, supra, p. 737), and from the decisions above referred to. The insurance company no more estops itself by

attaching such a clause in favor of an alleged mortgagee than it does by issuing a policy in the name of an alleged owner. It is not bound to inquire whether the creditor is really a mortgagee. It may accept the situation as presented to it when application is made for the insurance. The use of the word "trustee" in the mortgagee clause does not effect a different result. A judgment creditor does not secure the benefits of the independent contract of insurance created by the mortgagee clause by calling himself a trustee. The word "trustee," which appears in parenthesis in the clause, refers to the trustee under a deed of trust similar to and of the nature of a mortgage. In many of the states of the Union and in the District of Columbia mortgages as we have them in this State are not commonly used. Instead the land is conveyed to a trustee as security for the debt, and on default in payment by the mortgagor the trustee without foreclosure proceedings in court proceeds to sell under the deed of trust. "A trust deed in the nature of a mortgage is a conveyance of the property intended to be pledged in fee simple to one or more trustees who are to hold the same for the benefit of a lawful holder of the note, bond or other obligation secured, permitting the grantor to retain the possession and enjoy the rents and profits of the estate until default shall be made in the payment of the obligation secured, and with a power in the trustee or trustees, upon such default, to make a sale of the premises and satisfy the holder of the debt out of the net proceeds returning the surplus, if any, to the grantor ...... Such an instrument, although executed to trustees, instead of directly to the bondholders, and although in form a conveyance in trust is essentially a mortgage, and will be construed and enforced as such." 41 C. J. 282-3. Such a deed of trust was construed by our Supreme Court in Talbot's App., 2 Chest. Co. 413. The mortgage, or trust deed in the nature of a mortgage, as

between the parties conveys title to the real estate so far as is necessary to enforce it as a security (Presbyterian. Corp. v. Wallace, 3 Rawle 109; Bulger v. Wilderman & Pleet, 101 Pa. Superior Ct. 168, 173), and hence creates an interest in the land which is subject to insurance by a separate and independent contract, and it is to effect such insurance that the mortgagee clause is designed. The word "trustee" as used in the clause refers to such a trustee, practically equivalent to our mortgagee, whose interest is to be protected against defaults, etc., of the mortgagor.

The court below, also, ruled that the issue was improvidently granted because Clarke & Cohen made claim to only part of the fund, and being only for a part there was not a valid assignment of the fund or any part of it. This again was a misconception of the law and the facts. The only person who could set up that the transfer to Clarke & Cohen was not an assignment was the insurance company. A check on a bank for a part of the drawer's credit is not of itself an assignment of the fund to the extent of the check, but if the bank recognize the transaction by certifying the check it becomes an assignment of the amount of the check. Or if the drawee of the check withholds presenting it for such a time as to relieve the drawer of liability to make it good and the bank fails in the meantime, the drawee can present the check for his dividend and other depositors cannot object. The insurance company recognized the assignment to Clarke & Cohen and assented to it so far as an assent was necessary (Vetter v. Meadville, 236 Pa. 563) (1) by including them as payees in the check which it transmitted to pay the loss; and (2) by asking to have them interplead as assignees and claimants. Besides, the assignment to Clarke & Cohen, strictly speaking, was not of 5% of the fund; it was of all the fund, to the extent of their claim, which was 5%. It was in the same form as assignments to

creditors of the insured and loss payable clauses to such creditors are usually made. They cover the entire proceeds, but are only to the extent of the creditor's claim, "as its interest may appear." The bank's own claim was in like case; but being recognized by the insurance company it was equivalent to an order of payment of all the insurance on the building to the extent of its claim against the insured. The situation in the present case is the same as arose in Ireland v. Kelly, 60 N. J. Eq. 308, 47 Atl. 51, where it was held that when a person claims a fund because of an admitted contract with the holder of the fund, and another person claims a *portion of such fund,* because of an agreement with the admitted contractor, the holder of the fund may require them to interplead and it is not necessary that both of the claimants should assert a right arising out of an alleged *contract with the holder of the fund.* The facts alleged by the insurance company in its petition for an interpleader were within the rule entitling it to such an interpleader whether at common law or under the Act of 1836, supra, p. 77. Both parties claimed through a common source, the insured, Margaret Real. The claims were not merely colorable, frivolous or collusive. The insurance company was a mere stakeholder, without interest in the result, and was entitled to be relieved against double liability or double vexation on account of one liability: 15 R. C. L. 222; Schlessinger v. Smith, 300 Pa. 154; Bechtel v. Sheafer, 117 Pa. 555; Jordan's App., 10 W. N. C. 37; Knowles v. Jacobs, 4 Pa. Superior Ct. 268; Paugh v. Delaware Co. T. S. D. & T. Ins. Co., 62 Pa. Superior Ct. 523; De Zouche v. Garrison, 140 Pa. 430. The case bears no likeness to those relied on by counsel for appellees. In Capital Fire Ins. Co. v. Consolidated Mfg. Co., 34 W. N. C. 81, a lower court decision, the interpleader was refused because the insured in the policy of insurance was Consolidated Mfg. Co. while the other claimant to the fund

was an attaching creditor on a judgment against Pickering & Colescott. In McSorley v. Coyle, 40 Pa. Superior Ct. 560, the holder of the fund who petitioned for the interpleader was not a mere stakeholder. In Warrington v. Mengel, 41 Pa. Superior Ct. 362 the money was deposited with the holder and petitioner for interpleader for a specific purpose, and amounted to an equitable assignment of the fund.

On full consideration of the case we are of opinion that the court below erred in vacating and setting aside its order of November 5, 1928 awarding a feigned issue, and in directing that the money paid into court be paid to F. B. Holmes and C. C. Shull, trustees, etc.

The assignments of error are sustained. The order of the court below of April 6, 1931 is reversed. The order of November 5, 1928 and the feigned issue thereunder are reinstated, and the defendant in said issue is directed to file a plea in ancient form to the declaration filed by these appellants traversing their right to the fund in court, to be followed by a similiter, and a trial in due form. Costs to abide the determination of the issue.