## General Tire Company v. Tennis et al.

*Harris C. Arnold* and *John A. Coyle*, for plaintiff.

*Bard & Brown*, for garnishee.

*K. L. Shirk*, for mortgagee, intervenor.

ATLEE, P. J., April 13, 1934.—Counsel for the respective contestants in this matter have agreed upon a stipulation of facts as follows:

"1. On the .... day of ........, 1928, a mortgage was executed and delivered by R. H. Tennis et al. to Cecil National Bank of Port Deposit, Md., recorded on June 6, 1928, in the sum of $1,250, with interest at 6 percent, which purports to be a first lien on premises in Fulton Township, Lancaster County, Pa.

"2. On August 22, 1930, R. H. Tennis and Mary C. Tennis executed and delivered to Cecil Clyde Squier a mortgage covering the said premises in Fulton Township, Lancaster County, Pa. The mortgage was recorded on August 27, 1930, in the sum of $500.

"3. On April 18, 1931, General Tire Company instituted an action of foreign attachment against R. H. Tennis and Mary C. Tennis, and on April 20, 1931, the sheriff attached the real estate covered by said mortgage and all rents and profits thereof. R. A. Grubb was then and still is tenant of said premises under lease from R. H. Tennis and Mary C. Tennis, and said tenant was made garnishee in said attachment.

"4. On October 7, 1932, this court entered judgment in favor of General Tire Company and against R. H. Tennis and Mary C. Tennis, in said foreign attachment proceeding, in the sum of $1,279.90.

"5. On February 25, 1933, this court entered judgment in favor of General Tire Company and against R. A. Grubb, garnishee, for rents in his hands, and $500 was paid to plaintiff and credited on the judgment.

"6. On July 17, 1933, this court made an order on the sheriff to collect the rents of said premises as they accrued, from the garnishee, under the provisions of the Act of June 13, 1836, P. L. 568, secs. 66 and 67, to be applied to plaintiff's judgment.

"7. On July 19, 1933, the garnishees paid to the sheriff under said order the sum of $110.

"8. The sheriff of Lancaster County now has in his hands the sum of $242, rent paid to him on behalf of R. A. Grubb, the said tenant.

"9. The said mortgage to Cecil National Bank is now held by Dr. W. G. Jack, Walter Touchstone, and C. Clyde Squier, trustees of the said bank.

"10. There is now interest due and owing on the said mortgage, together with interest payment due in the sum of $143.75.

"11. In addition to the said mortgage to Cecil National Bank, the said R. H. Tennis is indebted to the said bank and trustees thereof in an amount of approximately $4,000.

"12. There is now due and owing accrued interest on the second mortgage held by Cecil Clyde Squier the sum of $57.50.

"13. General Tire Company claims to be entitled to the rents in the sheriff's hands, and has asked for an order directing him to pay them over.

"14. The said mortgagees oppose payment to the plaintiff and demand that the rents accumulated be paid on account of the interest charges on the first and second mortgages.

"15. An answer has not been filed by Cecil Clyde Squier, second mortgagee, in that the facts are to be included in the above stipulation.

"16. The said Cecil Clyde Squier et al., as trustees, join in this stipulation and in this proceeding for the purpose of protecting interest due and accumulated on the first mortgage heretofore mentioned.

"17. This statement of facts is not intended to be exclusive of any other facts which may appear of record and which may be pertinent to the issue.

"18. The sum of $242 now in the hands of the sheriff was paid to him at the following times, to wit, $110 on July 19, 1933, and the balance of $132 in January 1934.

"19. Counsel for Cecil Clyde Squier, mortgagee, notified the sheriff on July 21, 1933, that he claimed the rents of said premises on account of said mortgage, and on the same date, counsel notified W. Hensel Brown, Esq., attorney for R. A. Grubb, the tenant, of the claim of the mortgagee to the rents.

"20. At the time of attachment of the rents by the plaintiff and at the times of entry of judgment against defendant and garnishee, the tenant R. A. Grubb, was in possession of said premises under a lease from the defendants, R. H. and Mary C. Tennis, dated May 29, 1929, and a new lease between the parties changing the rental from $25 to $22 a month was executed in the month of March 1933."

The immediate question now before the court for disposition is: Can a mortgagee under the circumstances set forth in the foregoing stipulation of facts intervene and claim the rent moneys in the sheriff's hands as against the attaching creditor, the plaintiff in the foreign attachment in assumpsit, under which attachment the debtor's real estate was attached, as well as rents due by the tenant to his landlord, the attachment debtor? Counsel for the attaching creditor, General Tire Company, in their brief say that this precise question has not been raised before and that they therefore can cite no authorities immediately deciding the present controversy. From the foregoing stipulation of facts, we note the following as being pertinent in the instant discussion, namely:

"6. On July 17, 1933, this court made an order on the sheriff to collect the rents for said premises as they accrued, from the garnishee, under the provisions of the Act of June 13, 1836, P. L. 568, secs. 66 and 67, to be applied to plaintiff's judgment.

"18. The sum of $242 now in the hands of the sheriff was paid to him at the following times, to wit, $110 on July 19, 1933, and the balance of $132 in January 1934.

"19. Counsel for Cecil Clyde Squier, mortgagee, notified the sheriff on July 21,

1933, that he claimed the rents of said premises on account of said mortgage, and on the same date counsel notified W. Hensel Brown, Esq., attorney for R. A. Grubb, the tenant, of the claim of the mortgagee to the rents.

"20. At the time of attachment of the rents by the plaintiff and at the times of entry of judgment against defendant and garnishee, the tenant, R. A. Grubb, was in possession of said premises under a lease from the defendants, R. H. and Mary C. Tennis, dated May 29, 1929, and a new lease between the parties changing the rental from $25 to $22 a month was executed in the month of March 1933."

The provisions of the Act of 1836, under which the court directed the sheriff to collect and recover from the tenant the rents, are as follows:

"It shall be lawful for the court, at any time after the return of the attachment, on application by the plaintiff, and affidavit of a just cause of action, to issue a writ to the sheriff, requiring him to collect and recover from the tenant of the premises all such rent as shall have accrued, at the time of the execution of the writ of attachment, or as may accrue thereafter, until the further order of the court.

"The sheriff or other officer shall, by virtue of such writ, proceed from time to time to recover such rents, in like manner and with like powers as are or shall be possessed by a landlord under the laws of this commonwealth, and it shall be his duty forthwith, on the receipt of any moneys arising from the recovery of such rents, to bring the same into court": 12 PS §§ 2944 and 2945.

As to the mortgagees' right to claim the rent in the case of Bulger v. Wilderman and Pleet, 101 Pa. Superior Ct. 168, Judge Keller, in an exhaustive opinion, has gone over carefully and at great length all the authorities available, and has concluded that a mortgagee is the holder of the title of the mortgaged premises, to the extent that (p. 175) : "Thus we perceive an interest or estate in the land itself, capable of enjoyment, and enabling the mortgagee to grasp and hold it actually, and not a mere lien or potentiality, to follow it by legal process and condemn it for payment. The land passes to the mortgagee by the act of the party himself, and needs no legal remedy to enforce the right. But a lien vests no estate, and is a mere incident of the debt, to be enforced by a remedy at law, which may be limited. It is true, if the mortgagee be held out, he may have to resort to ejectment, but this is to avoid a conflict, and the statutory penalties for forcible entry, for otherwise he may take peaceable possession, and is not liable as a trespasser."

Judge Keller here quoted and adopted the conclusions of Chief Justice Agnew set forth in the case of Tryon et al. v. Munson et al., 77 Pa. 250, 262. In the Bulger case, the Superior Court decided that the payment of rent to the mortgagee on demand after default was a good defense to the mortgagor's right to distrain for rent. In other words, a mortgagee has a right to demand from a tenant in possession of mortgaged premises the rents which otherwise the tenant would be bound to pay the mortgagor. We have thus explained how it came that the sheriff received an order to collect the rents for the demised premises as provided by the Act of 1836, above cited, and how the mortgagee claims the rents as above set forth. The case of Bulger v. Wilderman and Pleet, above cited, has been followed in Kenwood v. Dordick et al., 104 Pa. Superior Ct. 12, 14; Clarke & Cohen v. Real, to use, 105 Pa. Superior Ct. 102, 116, and in Randal v. Jersey Mortgage Investment Co. et al., 306 Pa. 1, 5. In this last-mentioned case, the Supreme Court summarizes the principles of law involved as follows:

"1. While ordinarily, as to third parties, a mortgage may be only a security for the debt specified in the accompanying bond, it is, as to the mortgagor and mortgagee, and those claiming under and through them, a conveyance of the

88

land, and may be enforced as such whenever the mortgagee deems it necessary so to do in order to enable him to speedily and effectively recover the amount then due on the bond.

"2. Whenever it is necessary for a mortgagee, or his assignee, to enter into possession of the mortgaged property, in order to secure effectively what is due to him under the bond, he may do so peaceably, if he can, or by ejectment, if this becomes necessary.

"3. Whenever a mortgagor or one claiming title under him leases the mortgaged premises after the execution of the mortgage, his rights are necessarily subject to the prior rights of the mortgagee or his assignee, unless there is an agreement otherwise. Hence, if, under such circumstances, upon notice to the tenant, the latter pays the rent to the mortgagee or his assignee, it is the equivalment of an attornment, and the mortgagor and those claiming under him cannot justly complain of such payments.

"4. If a mortgagor or one claiming title under him collects rent from the tenant after the mortgagee or his assignee has properly notified the tenant to pay the rent on account of the mortgage debt, such owner will be held liable to account to the mortgagee or his assignee for the rent thus received, less any payments made on account of the property, which inured to the benefit of the one who should ultimately be found entitled to the rent so collected.

"5. If the mortgagee or his assignee collects rent from the tenant by virtue of the right so to do given by the mortgage, he must account therefor to the mortgagor, or those claiming title under him, and allow the net amount as a credit on the mortgage debt."

In the absence of any controlling decision on the question, it may be well to consider the law and the facts.

There always exists the right of the mortgagee to have the tenant in possession of the mortgaged premises pay to the mortgagee the rent which otherwise the tenant would pay to the landlord mortgagor, but this right does not become complete until the mortgagee makes demand upon the tenant and requires the tenant to pay to the mortgagee the rents which otherwise the tenant would pay to the landlord mortgagor.

On February 25, 1933, the court of common pleas of this county entered judgment in favor of General Tire Company and against R. A. Grubb, garnishee, for rents in his hands, and $500 was paid at that time to the instant plaintiff and credited on the judgment obtained on the foreign attachment in assumpsit issued on April 18, 1931. On July 17, 1933, the court of common pleas of this county made an order on the sheriff to collect the rents for said premises as they accrued, under the provisions of the Act of June 13, 1836, P. L. 568, secs. 66 and 67, to be applied to plaintiff's judgment. On July 19, 1933, the garnishee paid to the sheriff under the above order the sum of $110. The provisions of the act of assembly under which this was done have been set forth at length heretofore in this opinion. Under the provisions of section 67 of the Act of June 13, 1836, P. L. 568, it is to be noted that the sheriff or other officer, proceeding from time to time to recover such rents by virtue of the writ, shall proceed in like manner and with like powers as are or shall be possessed by a landlord. When the mortgagee notifies the tenant to pay to the mortgagee rents otherwise to be paid to the landlord mortgagor, the mortgagee asserts the rights of a landlord. Thus it appears that in this case both the sheriff and the mortgagee have asserted, and attempted to exercise, a like right, at least to the extent that both claim the rent due from the demised premises.

In an article headed "Mortgagee's Right to Rent after Default", in 80 University of Pennsylvania Law Review 269, there is an interesting discussion of

the question. This article says (pp. 271, 272) : "There are two situations that must be distinguished in considering the right of the mortgagee to the rents, *viz.*, whether the lease is made before or after the mortgage. Where the lease is made before the mortgage, it is well settled that the mortgage operates as an assignment of the mortgagor's reversionary interest. Privity of estate is created between the mortgagee and the tenant, to whom the former now stands in the relation of landlord. At common law, before this relationship could come into existence, it was necessary for the tenant to attorn to the mortgagee; this was dispensed with by the provisions of the statute of 4 Anne, c. 16, §§ 9 and 10 (1705). The doctrine was first announced by Lord Mansfield in the leading English case of *Moss v. Gallimore*, a case that has been authoritatively cited by English and American decisions ever since. The mortgage, being an assignment of the reversion, carries with it the legal title to the rent, and the mortgagee can assert his right thereto at any time."

This article further says: "Where, however, the mortgage precedes the lease, the legal significance of the transactions is different. There is no privity between the mortgagee and the tenant; therefore the former cannot exercise the rights of a landlord against the latter. However, since the mortgagee acquired his interest first, that interest is paramount and the rights of the tenant are subject thereto. The rights of the latter cannot rise any higher than those of his landlord, the mortgagor. Accordingly, the mortgagee can exercise the same rights against the tenant that he could have exercised against the mortgagor. Just as where the lease preceded the mortgage, it is customary for the mortgagee after the execution of the mortgage to allow the mortgagor to remain in possession and receive the rents. The mortgagor receives the rents to his own use, and does not have to account for them to the mortgagee. Once there is a default, the mortgagee has a right to possession, and to the rents and profits that are an incident thereto. He may notify the tenant to pay him, and should he succeed in getting the tenant to recognize his demand, the legal status of the parties is clear. The tenant is not denying his landlord's title; he is merely recognizing a superior and paramount interest. A payment to the mortgagee is a good defense to a subsequent action by the mortgagor for the same rent. The mortgagee takes possession of the property through the tenant, and the old tenancy is destroyed. Naturally, the mortgagee has to apply the rents to his debt, and account for any excess to the mortgagor. The new tenancy between the mortgagee and tenant is apparently one on a year to year basis; the mortgagee, in accepting the rent, does not thereby adopt or ratify the prior lease.

"Should the tenant refuse to attorn to the mortgagee, following a notice and demand for payment, the cases are quite uniform in holding that the mortgagee cannot thereafter distrain for the rent. The theory is that the mortgagee is not entitled to the rents until he has obtained possession; and he has not done so by merely notifying the tenant to pay him. Although the mortgagee can then sue the tenant as a trespasser and recover the mesne profits, such a remedy would be valueless against the typical, modern 'fly-by-night' tenant. The result is, therefore, that, pending foreclosure, the mortgagee has a right but no adequate method of enforcing it. Accordingly, in most jurisdictions, the mortgagee has been the recipient of equitable or statutory aid in the nature of a right to petition for the appointment of a receiver to collect the rents and profits during the period of default.

"Unfortunately, the Pennsylvania mortgagee, in this situation, is without a suitable remedy. Unless he can get the tenant to pay him, he is, because of practical considerations, virtually compelled to allow the foreclosure proceeding to take its course. He cannot get a receiver appointed, for there does not

seem to be any common law authority in this state for such action; the legal remedy is considered adequate. The only legal remedy available, however, is ejectment, and this remedy is worth nothing; the foreclosure would be determined long before the ejectment case came to an issue." (See pages 273 and 274).

In the instant case the lease was executed at a date later than the date of the mortgage.

From a careful consideration of all of the foregoing, it now appears as a matter of fact that the attaching creditor in the foreign attachment in assumpsit attached the rents before the mortgagee asserted his right to claim the rents from the mortgaged premises. Because of this priority in asserting this right, the instant court concludes that the attaching creditor is entitled to the rents to the extent that is necessary to satisfy the judgment entered in favor of the attaching creditor in the foreign attachment in assumpsit.

The court therefore makes absolute the rule on the sheriff to show cause why the Sheriff of Lancaster County should not pay out monies now in his hands, and directs the said sheriff to pay to General Tire Company, or to its counsel of record, the balance of rents in the sheriff's hands, to the extent that said rents are necessary to satisfy the amount of the judgment debt, interest, and costs, entered to May term, 1931, no. 27, in the Court of Common Pleas of the County of Lancaster. The overplus, after this payment, if any, is to be paid to the mortgagee, namely, to Cecil Clyde Squier.

From George Ross Eshleman, Lancaster, Pa.